Sheri KEEHN, as personal representative of Brent Keehn, Deceased, and on behalf of Jake Wayne Keehn, Shanda Lynn Keehn, Budd Gittens, Max Gittens, Billie Jones, Doug Keehn, Richard Keehn, and Georgia Keehn, and Rhonda Slagowski Birch, as personal representative of Kirt Slagowski, Deceased, and on behalf of Sierra Deanne Slagowski, Rick Slagowski, Delores Slagowski, Roger Slagowski, Danny Slagowski, Connie Staker, Pat Defa, Wendy Slagowski, Laura Russell, Diane Harris, and Lorraine Hansen, Appellants (Plaintiffs),

v.

The TOWN OF TORRINGTON, Wyoming, Torrington Police Department, and Patrolman Brad Schuppan, Appellees (Defendants).

No. 91–232.

Supreme Court of Wyoming.

July 14, 1992.

Richard J. Mulligan of Fix & Mulligan, Jackson, for appellants.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Dennis M. Coll, Senior Asst. Atty. Gen., Cheyenne, for appellee Brad Schuppan.

Alan B. Minier of Hirst & Applegate, P.C., Cheyenne, for appellee Town of Torrington.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

GOLDEN, Justice.

Appellants, personal representatives for the estates of Brent Keehn and Kirt Slagowski, appeal from a district court order which granted to the town of Torrington and to Officer Brad Schuppan their motions for summary judgment in joint wrongful death actions. Two issues are contested by the parties on appeal: (1) Whether, under the circumstances of this case, an issue of material fact exists as to whether Officer Schuppan breached his duty to apprehend, arrest and remove drunk drivers from the road on June 15, 1988; and (2) Whether, under the circumstances of this case, Officer Schuppan had the authority to execute a DWUI arrest outside of the Torrington city limits. We will affirm.

* Chief Justice at the time of oral argument.

FACTS

Officer Brad Schuppan of the Torrington Police Department was on duty during the late evening hours of June 14 and the early morning hours of June 15, 1988. While on patrol, Officer Schuppan noticed a red Suzuki Samurai parked in the tavern area of downtown Torrington. At approximately 2:15 a.m. on June 15, 1988, Officer Schuppan observed the Samurai headed west through Torrington on Highway 26. The Samurai had a burned-out headlight.

Recognizing an opportunity to check for a possible DWUI violation, Officer Schuppan followed the Samurai through one traffic light, one stop sign, and around two slight curves—a total distance of six-tenths of a mile. Observing nothing out of the ordinary, Officer Schuppan decided to stop the Samurai to issue a "fix-it" order for the burned-out headlight. Officer Schuppan reasoned that the "fix-it" stop would afford him yet a better opportunity to check for driver intoxication. Officer Schuppan accordingly activated his overhead lights to initiate the stop. The Samurai promptly pulled over. The stop was logged at 2:22 a.m. and occurred just outside of the Torrington city limits.

Officer Schuppan approached the Samurai looking for anything "hinky," i.e., unusual or suspicious. He shined his flashlight into the vehicle and noticed that it was occupied by four individuals, but did not observe any furtive behavior. Officer Schuppan then introduced himself to the driver, William Romero. Officer Schuppan informed Mr. Romero that he had been stopped for a burned-out headlight and asked for his driver's license. Mr. Romero grasped his wallet and withdrew his license without hesitation. Officer Schuppan observed that Mr. Romero had no difficulty with eye-hand coordination, that his speech was not impaired, that he did not appear nervous or upset, and that his eyes were not watery or bloodshot. Although Officer Schuppan detected a slight odor of alcohol coming from the vehicle, he could not place the odor as coming from Mr. Romero.

Officer Schuppan returned to his patrol car to complete the paperwork for the "fix-it" order. Upon return, he received a report of a stolen car and of broken glass in downtown Torrington. Believing that the two incidents were related, Officer Schuppan aborted his plans to issue a "fix-it" order, returned Mr. Romero's driver's license, and told him to have his headlight fixed. Officer Schuppan then proceeded to investigate the reported incidents. Dispatch records indicate that the stop ended at 2:24 a.m.

At 4:40 a.m., the red Suzuki Samurai was involved in a head-on collision thirty-two miles west of Torrington on Highway 26. The Samurai had crossed the center line and collided with the vehicle of Manuel Otero. Mr. Otero was killed in the accident, as were two passengers of the Romero vehicle, Brent Keehn and Kirt Slagowski. Mr. Romero had a blood alcohol content of 0.13 percent.

Following compliance with the presentation of claims procedure outlined in Wyoming's Governmental Claims Act, personal representatives for the estates of Mr. Keehn and Mr. Slagowski timely filed wrongful death actions in district court. The joint complaint alleged that Officer Schuppan was negligent in failing to arrest Mr. Romero for driving while intoxicated on June 15, 1988, and sought to hold the town of Torrington vicariously liable. The town of Torrington and Officer Schuppan duly responded, after filing appropriate responsive pleadings, with motions for summary judgment. The motions were resisted by the estates of Mr. Keehn and Mr. Slagowski. The district court granted summary judgments for the town of Torrington and for Officer Schuppan following a hearing. This appeal followed.

## STANDARD OF REVIEW

■ When reviewing the propriety of a summary judgment, this court reviews the record from the vantage point most favorable to the party opposing the motion to determine whether there exists an issue of material fact which would preclude the court from issuing a judgment as a matter of law. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo. 1987). An issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting one the essential elements of the cause of action or defense asserted by the litigants. *McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 63 (Wyo.1989). If no issue of material fact is found to exist, summary judgment is appropriate—even in a negligence case. *DeWald v. State*, 719 P.2d 643, 651 (Wyo.1986).

## DISCUSSION

The Wyoming Governmental Claims Act provides that governmental entities and public employees acting within the scope of their duties are immune from suit in tort except as expressly waived by the legislature. Wyo.Stat. § 1–39–104(a) (June 1988). The waiver of governmental immunity applicable to the instant case is found in Wyo.Stat. § 1–39–112. Section 1–39–112 provides that "[a] governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties." The litigants do not dispute that Officer Schuppan was a peace officer acting within the scope of his duties during the early morning hours of June 15, 1988. Rather, the present controversy centers on whether reasonable minds could differ as to whether Officer Schuppan's conduct was or was not tortious.

■ When evaluating a peace officer's conduct under Wyoming's Governmental Claims Act, we apply general principles of tort law. The tort which Officer Schuppan is alleged to have committed is that of negligence. Negligence is defined generically as the failure to act as a reasonable man of ordinary prudence under like circumstances. *McClellan v. Tottenhoff*, 666 P.2d 408, 411 (Wyo.1983). Translated into the law enforcement context, negligence is the failure to act as a reasonable peace officer of ordinary prudence under like circumstances. The circumstances which are taken into account when determining negligence are those as they appeared at the time of the alleged tortious act or omission.

*DeWald,* 719 P.2d at 652. This court has stated that it will not unfairly use hindsight in assessing the issue of negligence. *Id.; accord Green v. Sibley, Lindsay & Curr Co.,* 257 N.Y. 190, 177 N.E. 416, 417 (1931) (Cardozo, C.J., stating that negligence cannot be evaluated in light of "the wisdom born of the event").

The elements that a plaintiff must establish to maintain a negligence action in a court of law are: (1) that the defendant owed to the plaintiff a duty to conform to a specified standard of care; (2) that the defendant breached the duty of care; (3) that the defendant's breach of the duty of care proximately caused injury to the plaintiff; and (4) that the injury sustained by the plaintiff is compensable by money damages. *See, MacKrell v. Bell H₂S Safety,* 795 P.2d 776, 779 (Wyo.1990); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 30 (5th ed. 1984). Elements (1) and (2), duty and breach of duty, address whether the conduct of the alleged tortfeasor was in fact negligent. Element (3), proximate cause, is considered only after negligence is first established to determine whether the tortfeasor should be legally responsible for his negligence. Finally, element (4), injury/damages, is considered to determine the extent of the tortfeasor's liability to the plaintiff if the foregoing issues are resolved affirmatively.

Consistent with the foregoing requirements, appellants in the instant case assert that Officer Schuppan had a duty to act as a reasonable peace officer of ordinary prudence with respect to enforcing Wyoming's drunk driving laws on June 15, 1988. They aver that Officer Schuppan breached his duty of care on the date in question by failing to administer field sobriety tests to Mr. Romero to determine the extent of his intoxication. Appellants reason that, had the field sobriety tests been performed, Officer Schuppan would have known that Mr. Romero was intoxicated and would have arrested him for DWUI. Extending this line of reasoning, appellants assert that the accident would not have occurred had Mr. Romero been arrested. Accordingly, they conclude that the failure to arrest Mr. Romero was the proximate cause of the accident and seek damages for the resulting deaths of Mr. Keehn and Mr. Slagowski.

Whether and to whom a duty of care exists under a given set of circumstances is a question of law. *MacKrell,* 795 P.2d at 779; Keeton, *supra,* § 37. This court has previously noted that peace officers have a general duty to apprehend, arrest, and remove drunk drivers from Wyoming's roadways. *DeWald,* 719 P.2d at 649. This duty emanates from Wyoming's drunk driving law, Wyo.Stat. § 31–5–233 (June 1989). Section 31–5–233, enacted for the protection of the public at large as well as for the individual inebriate and his/her passengers, provides in pertinent part:

(b) No person shall drive or have actual physical control of any vehicle within this state if the person:

(i) Has an alcohol concentration of ten one-hundredths of one percent (0.10%) or more; or

(ii) To a degree which renders him incapable of safely driving:

(A) Is under the influence of alcohol;

(B) Is under the influence of a controlled substance;

or

(C) Is under the influence of a combination of any of the elements named in subparagraphs (A) and (B) of this paragraph.

Subsumed within the general duty to apprehend, arrest, and remove drunk drivers from Wyoming's roadways is the duty to investigate potential DWUI violations. This brings us to the precise duty issue raised by this appeal: What is the nature and extent of a peace officer's duty to investigate a potential DWUI violation when, during an unrelated traffic stop, it is reasonably suspected that the driver has been drinking alcoholic beverages. While this case presents the opportunity to define specifically a peace officer's duty in this respect, we decline to do so both on the ground that it is beyond our arena of expertise and on the ground that rigid rules are not consistent with the realities of law enforcement. Consequently, we resort to

traditional tort principles and hold that a peace officer's duty to investigate a potential DWUI violation during an unrelated traffic stop is dictated by what a reasonable peace officer of ordinary prudence would do under like circumstances.

While the appellants acknowledge that the question of duty is a matter of law, they properly assert that the question of whether a duty has been breached is for the fact finder, unless reasonable minds could not differ. *Hozian v. Weathermon*, 821 P.2d 1297, 1299 (Wyo.1991); Keeton, *supra*, § 37. Appellants contend that summary judgment was inappropriate in this case because reasonable minds stand to differ on whether Officer Schuppan breached his duty to apprehend, arrest, and remove drunk drivers from the road on June 15, 1988, by failing to adequately investigate the extent of Mr. Romero's intoxication.

Proper evaluation of the appellants' contention requires that we apply our aforementioned standard of review in light of the legal and factual realities inherent in the field of law enforcement. As to the legal realities, it is first important to note that the United States and Wyoming Constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Wyo. Const. art. 1, § 4. A warrantless arrest is an unreasonable seizure when not supported by probable cause. Probable cause for a warrantless arrest exists when, under the totality of the circumstances, a prudent, reasonable, and cautious peace officer would be led to believe that a crime has been or is being committed and that the individual arrested is the perpetrator. *Jandro v. State*, 781 P.2d 512, 517–18 (Wyo.1989); Wyo.Stat. § 7-2-103 (June 1987). A peace officer who executes a warrantless arrest without probable cause can be held liable for the constitutional tort of false arrest. *See generally Town of Jackson v. Shaw*, 569 P.2d 1246 (Wyo.1977); *Rodarte v. City of Riverton*, 552 P.2d 1245 (Wyo.1976).

A second legal reality of note is that investigative detentions are also subject to the constraints imposed by the fourth amendment of the United States Constitution and by Article 1, § 4 of the Wyoming Constitution. A peace officer may temporarily detain an individual for the purpose of investigation only when he has a reasonable suspicion, based on all the circumstances, that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968); *see also United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Olson v. State*, 698 P.2d 107 (Wyo.1985). Investigative detentions are limited in both scope and duration. Peace officers are encouraged, if not constitutionally obliged, to employ "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229, 238 (1983) (plurality); *see also United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

A third legal reality worth noting is that it is lawful in Wyoming, as in other states, to drink and drive safely. Wyo.Stat. § 31-5-233 (June 1989). A peace officer may not arrest an individual for DWUI merely because it is late at night and, during an unrelated traffic stop, the officer detects the odor of alcohol. Rather, the peace officer must have probable cause to believe that the individual has actual physical control of a motorized vehicle while legally intoxicated. Wyo.Stat. § 31-5-233 (June 1989). Section 31-5-233 defines legal intoxication as having a blood alcohol content equal to or greater than 0.10% or as being otherwise incapable of driving safely while under the influence of an intoxicant.

As to the factual realities, governments simply do not have the resources to protect all citizens at all times from the consequences of all illegal or tortious activity. Consequently, law enforcement agencies and personnel must be afforded some discretion as to how to marshall their time, talents, and assets to achieve the greatest overall good. That an intoxicated driver or other law violator causes injury to another does not, without more, necessarily mean that a governmental entity or public employee was negligent. *See* Wyo.Stat. § 1–

39–102(b) (June 1988) (governmental entities or public employees are not subject to strict liability). Rather, the facts of each case must be independently examined.

Examining the facts of the instant case in light of the foregoing discussion and the applicable standard of review, we conclude that the trial court did not err in granting summary judgment. The undisputed facts of this case are that Officer Schuppan conducted numerous informal sobriety tests on Mr. Romero, none of which indicated that Mr. Romero was legally intoxicated.[1] As denominated by this court, these tests included:

1. Motor Vehicle Operation Test. Officer Schuppan followed Mr. Romero for a distance of six-tenths of a mile through the traffic control areas of downtown Torrington. He personally observed Mr. Romero properly respond to traffic signals and properly negotiate curves in the road. Officer Schuppan noticed no erratic or unusual driving behavior. Officer Schuppan's testimony is confirmed by Mr. Romero. Mr. Romero testified he experienced no difficulty driving until 15 to 20 minutes outside of Torrington.

2. Verbal Proficiency Test. Officer Schuppan engaged Mr. Romero in conversation after stopping him for driving with a burned-out headlight. One of Officer Schuppan's covert motives for doing so was to check to see if Mr. Romero was under the influence of alcohol. Officer Schuppan testified that Mr. Romero's speech was not slurred and that his speech patterns were not impaired. This testimony was also confirmed by Mr. Romero. In response to the query, "How were you talking?" Mr. Romero responded "I seemed to be talking okay at the time."

3. Eye–Hand Coordination Test. Officer Schuppan asked Mr. Romero to produce his driver's license. Again, one of his motives was to determine if Mr. Romero was physically or mentally impaired by the influence of alcohol. Officer Schuppan testified "I've had people that go through all their pictures and credit cards and things and bypass their license three or four times. You finally have to say, there it is. . . . The guy [Mr. Romero] grabbed his wallet, I can't remember when he got it out, but he went right to his license, got it out and handed it to me." Mr. Romero confirmed Officer Schuppan's testimony in this regard as well.

4. Overt Manifestations Test. In what is really a garden-variety sobriety test, Officer Schuppan looked for any overt indication that Mr. Romero was legally intoxicated. He testified that Mr. Romero's eyes were not bloodshot or watery, that he could not smell the odor of alcohol coming specifically from Mr. Romero's breath, that Mr. Romero's behavior was not evasive or furtive in nature, that he did not appear to be nervous or upset, and that his reactions were very good. Mr. Romero did not submit evidence to controvert Officer Schuppan's observations along these lines.

After conducting the foregoing informal sobriety tests, Officer Schuppan determined that he had no reason to further detain Mr. Romero for the purpose of conducting more extensive sobriety testing, let alone probable cause to arrest Mr. Romero for DWUI. Officer Schuppan concluded that "all I've got at this point is a guy with a headlight out." Officer Schuppan's conclusion was confirmed by Mr. Romero. Mr. Romero testified, "I didn't think I was that—I wasn't drunk—I thought I wasn't drunk enough not to drive and the police officer must have thought that too because he let us go."

## CONCLUSION

Viewing the undisputed facts of this case in light of the applicable standard of review

---

1. Appellants did point to several inconsistencies between the testimony of Officer Schuppan and that of Mr. Romero which they assert create an issue of material fact. Those inconsistencies were essentially that Officer Schuppan failed to see Kirt Slagowski sleeping in the Samurai when it was parked in downtown Torrington and that Officer Schuppan failed to see the beer cans that were alleged to be on the floor of the Samurai when he shined his flashlight into the vehicle following the stop. We fail to see how either one of these alleged oversights creates an issue of material fact as to whether Officer Schuppan was negligent on the date in question.

and the legal and factual realities of law enforcement, we hold that no reasonable fact finder could conclude that Officer Schuppan acted as an unreasonable peace officer of substandard prudence by not arresting Mr. Romero on June 15, 1988. Consequently, we do not consider the other elements of appellants' negligence action, nor do we reach the second issue presented by the parties. The district court's order which granted to the town of Torrington and to Officer Schuppan their motions for summary judgment is affirmed.