**Charlene GARCIA, Appellant (Plaintiff),**

v.

**Officer Roger LAWSON, Appellee (Defendant).**

**No. 96–132.**

Supreme Court of Wyoming.

Dec. 6, 1996.

Anthony F. Ross of Ross & Ross, P.C., Cheyenne, for appellant.

Terry L. Armitage, Cheyenne, for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Charlene Garcia appeals from the summary judgment which was entered in favor of Appellee Officer Roger Lawson on Garcia's claim of intentional infliction of emotional distress.

We affirm.

## ISSUES

Garcia presents a single issue for our review:

> I. Was the defendant Lawson entitled to summary judgment on the plaintiff's claim of intentional infliction of emotional distress or are there genuine issues of material fact which would preclude the granting of summary judgment?

## FACTS

We are familiar with this case as it was previously before us on a different issue. *Lawson v. Garcia,* 912 P.2d 1136 (Wyo.1996). We enumerated the facts in the following way:

> The following recitation of facts is based upon the undisputed facts as demonstrated by the summary judgment materials and states those facts in the light most beneficial to the nonmoving party affording that party the benefit of all favorable inferences that may be drawn from them. The nonmoving party in this case is appellee, Charlene Garcia (Garcia). From February 22, 1990 until February 24, 1990, Garcia was held captive by her estranged boyfriend in Cheyenne, Wyoming. On February 24, 1990, Garcia escaped and eventually contacted the Cheyenne Police Department. Officer Roger Lawson (Lawson) was dispatched to investigate Garcia's case. Garcia informed Lawson that her ex-boyfriend broke into her sister's house, where she was house-sitting, on February 22, 1990

and held Garcia against her will until February 24, 1990. Further, Garcia informed Lawson that her ex-boyfriend repeatedly raped her and physically abused her during her confinement.

The physical evidence corroborated Garcia's claims. The back door of her sister's home showed signs of forced entry; there was a broken statue that Garcia claimed her attacker threw at her, hitting her in the shoulder; there was a fist-sized hole in the wall; and Garcia had bruises on her arm and head. Lawson was made aware of this physical evidence. In spite of the overwhelming evidence, Lawson refused to have a rape kit performed on Garcia and further informed her that neither he nor the Cheyenne Police Department could do anything about the matter since it was a boyfriend/girlfriend situation and it would be her word against his. Lawson did not collect any evidence while he was at Garcia's sister's home. However, while continuing the investigation, Lawson did take the opportunity to discuss the size of a mutual acquaintance's breasts and to invite Garcia to go out for a beer with him.

Lawson ultimately sought advice concerning how the situation should be reported, but could find no one in the Cheyenne Police Department to advise him. Unable to find an experienced officer, he performed his own research and concluded that there was no basis for felony charges. Finally, Lawson wrote a citation and complaint charging Garcia's assailant with disturbance of the peace.

Lawson was suspended by the Cheyenne Police Department, and other officers within the department were placed in charge of the investigation. However, the charges filed with the district attorney's office were eventually dismissed for lack of evidence. Garcia filed a complaint on February 11, 1993, and later amended that complaint to include a cause of action pursuant to 42 U.S.C. § 1983, alleging that Lawson violated her constitutional right to equal protection under the law. Lawson filed a motion for summary judgment claiming, among other things, that he was immune from suit pursuant to the doctrine of qualified immunity. The district court

refused to grant that motion, and Lawson filed this interlocutory appeal.

912 P.2d at 1137–38.

In that appeal, we reversed the district court's order, holding that Lawson was entitled to invoke the defense of qualified immunity. 912 P.2d at 1139. In this appeal, Garcia contests the district court's order which granted Lawson's motion for a summary judgment on her claim of intentional infliction of emotional distress.

## STANDARD OF REVIEW

 Summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Roitz v. Kidman,* 913 P.2d 431, 432 (Wyo. 1996); *see also* W.R.C.P. 56(c). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *JCI v. TL By TL (Paternity of TS),* 917 P.2d 183, 185 (Wyo. 1996). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Scott v. Scott,* 918 P.2d 198, 199 (Wyo.1996). We do not accord any deference to the district court's decisions on issues of law. *Koopman By and Through Koopman v. Fremont County School District,* 911 P.2d 1049, 1051 (Wyo.1996).

## DISCUSSION

We first recognized the intentional-infliction-of-emotional-distress cause of action in *Leithead v. American Colloid Company,* 721 P.2d 1059 (Wyo.1986). In doing so, we adopted § 46 of the RESTATEMENT (SECOND) OF TORTS:

"Outrageous Conduct Causing Severe Emotional Distress

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional dis-

tress, and if bodily harm to the other results from it, for such bodily harm."

*Leithead,* 721 P.2d at 1065 (quoting RESTATEMENT (SECOND) TORTS § 46 (1965)).

■ Outrageous conduct is defined as "conduct which goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized community." 721 P.2d at 1066 (citing RESTATEMENT, *supra,* § 46 cmt. d). Severe emotional distress is defined as distress which is "so severe that no reasonable man could be expected to endure it." *Id.* (citing RESTATEMENT, *supra,* § 46 cmt. j).

■ In *Leithead,* we recognized that adoption of the intentional-infliction-of-emotional-distress cause of action could flood the courts with fraudulent claims and create potentially unlimited liability for every type of mental disturbance. 721 P.2d at 1065. We also noted, however, that frivolous claims can be weeded out at the summary judgment stage. 721 P.2d at 1066.

> "Court and jury. It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."

*Id.* (quoting RESTATEMENT, *supra,* § 46 cmt. h).

■ After having examined the record in this case in the light most favorable to Garcia, we agree that Lawson failed to complete a quality investigation and that he made two offensive remarks. Although Lawson could certainly have been more considerate in his dealings with Garcia, his conduct was at most annoying, insulting, and insensitive. His conduct was not, however, what we would characterize as being beyond all possible bounds of decency, atrocious, or utterly intolerable in a civilized community. " '[T]he law does not afford a cause of action for bad taste, boorishness, condescension, obnoxious-

ness, or social ineptitude.' " *Drejza v. Vaccaro,* 650 A.2d 1308, 1311 (D.C.1994).

We conclude that no genuine issue of material fact existed with regard to whether Lawson's conduct was sufficiently extreme and outrageous to support an intentional-infliction-of-emotional-distress claim and that Lawson is, therefore, entitled to have a judgment as a matter of law. Having concluded that Lawson's conduct did not sustain a cause of action for intentional infliction of emotional distress, we do not need to address whether Garcia suffered severe emotional distress as a result of this conduct.

Affirmed.

THOMAS, Justice, concurring specially.

I concur with the majority opinion of the Court in this case, but I choose to add some comments of my own. There can be no question that Lawson's approach to the situation with Garcia was insensitive. It quite likely was disappointing to the police department of the City of Cheyenne. The question, however, is whether Lawson committed the tort of intentional infliction of emotional distress by failure to investigate Garcia's allegation of rape more diligently.

It is the law of this case that Garcia did not enjoy a right to a "quality investigation." *Lawson v. Garcia,* 912 P.2d 1136 (Wyo.1996). Indeed it is the law of this case that Lawson enjoyed qualified immunity for his failure to investigate Garcia's allegations. Without citing *Keehn v. Town of Torrington,* 834 P.2d 112 (Wyo.1992), we held that Lawson was not charged with knowing that a reasonable police officer would have conducted a more diligent investigation. I am satisfied that our holdings in *Lawson* and *Keehn* are correct, although perhaps *Keehn* could have gone further in analyzing whether an officer owes a duty to an individual citizen as distinguished from the duty owed to the community. The law should not shackle law enforcement officers with a duty to investigate all possible citizen complaints at the hazard of defending a lawsuit.

Be that as it may, Lawson did undertake to do something in this situation, and the question before the court is whether he did it

in a manner that the law accepts. The logic of how an officer can by the same conduct invoke the doctrine of qualified immunity because no reasonable police officer would be charged with knowledge of a rule of law requiring more in the way of investigation and commit the tort of intentional infliction of emotional distress escapes me. The definition of and the test for the outrageous conduct required is articulated in RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965):

> d. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

I submit that conduct that qualifies for immunity as we held in *Lawson* cannot possibly satisfy this language. The reliance upon the sense of an average member of the community is no more amorphous than the "reasonable prudent man" standard so common to the law of torts generally.

In my opinion, when this court chooses to adopt the RESTATEMENT (SECOND) OF TORTS (1965) as the rule of law for Wyoming, we must accept the collective wisdom that surrounds the black letter rule. That includes the comments and the illustrations in those comments that are an inseparable part of the rule.

Neither, should we ignore the role of the court as a gatekeeper. In this regard the RESTATEMENT (SECOND) OF TORTS § 46 cmt. h (1965) has this to say:

> h. *Court and jury.* **It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.** Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

(Emphasis added.) In light of this language, I return to my thesis that conduct which achieves qualified immunity under the law may not reasonably be regarded "as so extreme and outrageous as to permit recovery" nor is it "necessarily so." Certainly conduct that would permit the court to send the issue to a jury would have to be recognized by a reasonable police officer as beyond the protection of qualified immunity.

GOLDEN, Justice, dissenting, with whom LEHMAN, Justice, joins.

I respectfully dissent. This case serves to highlight several concerns I have about summary judgment decision-making with respect to claims of intentional infliction of emotional distress. The concerns, which are inter-related, have to do with the court's role in determining the sufficiency of the evidence and the court's establishment and principled application of standards relating to the nature of the actor's alleged conduct and to the level of severity of the plaintiff's alleged emotional reaction to the alleged conduct.

In this case, the dispositive issues are (1) whether an impartial jury could reasonably view Officer Lawson's alleged conduct, as described by Ms. Garcia, as extreme and outrageous, and (2) whether an impartial jury could reasonably view Ms. Garcia's emotional reaction to Officer Lawson's alleged conduct, as described by Ms. Garcia, as severe. Having concluded as a matter of law that Officer Lawson's alleged conduct "was not ... what *we* would characterize as being beyond all possible bounds of decency, atrocious, or utterly intolerable in a civilized community," the majority does not address the second issue of Ms. Garcia's severe emotional distress. (Emphasis added).

Focusing on the first issue, then, what is the legal standard of measurement used by the court to characterize Officer Lawson's alleged conduct? I find no standard stated in the opinion. Is the standard objective or subjective? Is "outrageousness" in the eye of the beholder? A few years ago we had a similar problem in *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211 (Wyo. 1994). In that case, against my dissent, this court reversed a summary judgment in favor of an employer, holding that genuine issues of material fact existed concerning the employer's conduct, before and after termination of employment, toward an employee and concerning the employee's emotional reaction to that conduct. One searches that opinion in vain for a standard against which to measure the employer's conduct. Should the standard established and applied in an employer-employee case be the same as the standard established and applied in a police officer-citizen/crime victim case? It seems to me we must establish useful and helpful standards against which to measure conduct and emotional reaction to conduct because we strive to make principled decision-making in order to treat similarly situated citizens similarly. The result in this case must be better explained than to say Officer Lawson's conduct *was not* outrageous because a majority of this court's members are not sufficiently offended by it. The result in *Wilder* must be better explained than to say the employer's conduct *was* outrageous because a majority of this court's members were sufficiently offended by it. We must have a rule of law, not a rule of man. I fear what others have feared:

> [T]he Court embarks on what I predict will be an endless wandering over a sea of factual circumstances, meandering this way and that, blown about by bias and inclination, and guided by nothing steadier than the personal preferences of the helmsmen, who change with every watch.

*Wornick Co. v. Casas,* 856 S.W.2d 732, 737 (Tex.1993) (Hecht, Justice, concurring).

With respect to the establishment and application of standards in this area of the law, several courts have risen to the task. From these cases, an analytical framework emerges, one that uses several factors to assist the court in determining whether the particular conduct in question is outrageous in nature under the circumstances:

1. The actor is in a position of authority and trust. *Crump v. P & C Food Markets, Inc.,* 154 Vt. 284, 576 A.2d 441, 448 (1990) (abuse of authority in employer-employee setting); *Drejza v. Vaccaro,* 650 A.2d 1308, 1312–17 (D.C.App.1994) (police officer); *Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498, 507–08 (1994) (police officer).

2. The plaintiff is peculiarly susceptible to emotional distress and the actor knows, or should know, of that condition. *Doe,* 204 Ill.Dec. 274, 641 N.E.2d at 507–08; *Drejza,* 650 A.2d at 1312–17; *Denton v. Chittenden Bank,* 163 Vt. 62, 655 A.2d 703, 707 (1994); *Pavilon v. Kaferly,* 204 Ill.App.3d 235, 149 Ill.Dec. 549, 561 N.E.2d 1245, 1252 (1990).

*And see generally* Merle H. Weiner, *Domestic Violence and the Per Se Standard of Outrage,* 54 MD. L.REV. 183, 200–207 (1995); and Angela M. Elsperger, Comment, *Damages—Intentional Infliction of Emotional Distress in the Workplace: Defining Extreme and Outrageous Conduct in North Dakota's Job Description,* 70 N.D. L.REV. 187, 194–95 (1994).

Applying the above and foregoing factors to the evidence taken in the light most favorable to Ms. Garcia, I conclude that reasonable persons could differ in their conclusion as to whether Officer Lawson's conduct was extreme and outrageous. As an investigating police officer, he was in a position of authority and trust with respect to Ms. Garcia. He knew Ms. Garcia was particularly susceptible to emotional distress because of the violent crimes of which she was the victim. Considering the demeaning manner in which he dealt with her, his reference to another woman's breasts, and his expression of interest in initiating a personal relationship with Ms. Garcia, an average member of the community would no doubt resent a police officer who treated a sexual assault victim in a rude and demeaning way and would

consider such conduct as extreme and outrageous.

With respect to the evidence of Ms. Garcia's emotional distress, I have considered it in the light most favorable to Ms. Garcia, as I must, and have concluded that it passes muster for jury consideration.

I would reverse the summary judgment and remand for trial.