Cathy L. McCOY, Personal Representative of the Estate of Joseph Arlint, on behalf of Cathy L. McCoy, Thomas E. Arlint, Tanya Lee Arlint Cundy, and Keely Rebecca Agler, Appellants (Plaintiffs),

v.

CROOK COUNTY SHERIFF'S DEPARTMENT; Town of Hulett Police Department; David L. Wolfskill; and John McPartland, Appellees (Defendants).

No. 98–92.

Supreme Court of Wyoming.

Sept. 16, 1999.

Representing Appellants: Randall T. Cox, Gillette, WY; and Jeremy D. Michaels of

Michaels & Michaels, Gillette, WY. Argument by Mr. Michaels.

Representing Appellees: John R. Perry, Buffalo, WY for Crook County Sheriff's Department and Wolfskill; and Thomas C. Wilson, Senior Assistant Attorney General for Town of Hulett and McPartland. Argument by Messrs. Perry and Wilson.

Before LEHMAN, C.J., and THOMAS, GOLDEN, and TAYLOR,* JJ., and DONNELL, D.J.

DONNELL, District Judge.

Appellants appeal the decision of the district court dismissing their claims for peace officers' negligence and wrongful death on summary judgment. The personal representative and next of kin of Joseph Arlint sought to receive damages for the wrongful death of Arlint, asserting that a deputy sheriff and a police chief were negligent in failing to arrest Arlint when they encountered him operating a motorbike while intoxicated. Finding that no legally enforceable duty to arrest existed on the part of the police officers, we affirm the decision of the district court.

### ISSUES

Appellants set forth a number of issues for our consideration:

I. Duty:

Whether a Wyoming peace officer who initiated a lawful traffic stop of an obviously, undeniably intoxicated motorist, owed a duty to that motorist to arrest him or, in the alternative, to disable or impound the motorist's vehicle.

II. Causation:

Whether the release of an obviously, undeniably intoxicated motorist and his vehicle by a Wyoming peace officer after a lawful traffic stop, followed immediately by a wreck inflicting fatal injuries, proximately caused the motorist's death.

III. Immunity:

Whether a Wyoming peace officer engaged in patrol functions who failed to arrest an obviously, undeniably intoxicated motorist

during a lawful traffic stop is entitled to common law immunity from liability for the death of the motorist.

Appellants query with respect to each issue whether "the District Court could resolve the foregoing ... issue on a motion for summary judgment in this case, given the disputed facts shown in the record below."

Appellees' issues are stated somewhat more succinctly:

a. Were the material facts undisputed and supportive of the Court's entry of summary judgment in favor of Appellees?

b. Was the Court's alternative finding that qualified immunity be applied to Appellees appropriate?

### FACTS

Considering the facts of this case in a light most favorable to the party opposing the Motion for Summary Judgment as we are bound to do, the record reveals the following:

On June 16, 1994, decedent Joe Arlint, age 23, and his friend, Matt Sulephen, were living at the home of the Crook County Justice of the Peace, Ron Waugh. Mr. Arlint was the son of Judge Waugh's fiancé, Cathy McCoy. Judge Waugh and his fiancé were out of town and, unbeknownst to them, Mr. Arlint and his friends had planned a party in their absence. The record indicates that Arlint and Sulephen consumed considerable amounts of alcohol during the course of the day. Sometime after 5:00 p.m., Arlint took an old motorbike from the Waugh residence and traveled to Hulett where he visited at least one bar with Sulephen. The two were ejected from the premises for being drunk and disorderly.

At about 9:34 that evening, a telephone call was made to the Crook County Sheriff's Office indicating someone was hot-rodding around Hulett on a motorbike, riding across lawns and parks. Deputy David Wolfskill responded to the call and immediately observed decedent on a motorbike speeding 44 m.p.h. in a 30 m.p.h. zone. He initiated a traffic stop and found decedent to be loud, uncooperative and verbally abusive. Con-

* Retired November 2, 1998.

cluding that he needed additional help, Deputy Wolfskill called for backup. Hulett's Chief of Police, John McPartland, who was off duty that day, responded to the scene.

Subsequent medical evidence and other testimony indicate that decedent was legally intoxicated, but the officers state they observed no behavior or other indicators that would lead them to believe Arlint was drunk. Rather than arrest Arlint, the officers issued four citations to him for speeding, no driver's license in possession, no registration and no insurance. No attempt was made to check the status of his license, to take the keys, or to impound the motorbike. In fact, a records check would have revealed a history of DUI arrests and a suspended license.

Arlint apparently was told to park the motorbike, but he had a friend across the street in a pickup truck and may have asked whether he could put the motorbike in the truck and transport it home. The officers made no attempt to see that he did so, but did observe him wheeling it across the street to the pickup. The officers then adjourned to Chief McPartland's house for ice cream. They cleared the traffic stop at about 10:00 p.m.

Sometime between 10:30 and 11:00 p.m., an unconscious Mr. Arlint was brought into the by-then ongoing party at the Waugh residence. He apparently had been riding the motorbike after the officers left and was involved in a serious accident. He was deposited on the floor in the laundry room and left for several hours thereafter. He was finally transported to the Hulett ambulance barn and thence to the Crook County Hospital. He was ultimately transported to the hospital in Rapid City, South Dakota where he languished in a coma for nearly four months. Arlint died on October 5, 1994.

Appellants assert the officers had ample reason to arrest Arlint during the traffic stop, but that they failed to do so because they feared reprisals from Judge Waugh and because Wolfskill had a date in Moorcroft that evening. They argue the officers had a duty to arrest Arlint for DUI for his own protection and for the protection of the public in general. The district court determined that "[s]ufficient undisputed facts exist to permit summary judgment" in favor of defendant. It also determined the doctrine of qualified immunity applied to protect the officers, the officers owed no duty to Mr. Arlint, and the officers' negligence, if any, was not the proximate cause of his death. Appellants dispute all of these determinations.

### STANDARD OF REVIEW

We have stated the standard of review on appeals from summary judgment on many occasions.

Summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which has been asserted by the parties.

*Davis v. State,* 910 P.2d 555, 558 (Wyo.1996) (citations omitted). The court examines the materials relevant to the motion from the vantage point most favorable to the party opposing the motion and gives that party the benefit of all favorable inferences which may fairly be drawn from the material. *Smith v. Throckmartin,* 893 P.2d 712, 714 (Wyo.1995). The party moving for summary judgment bears the initial burden of establishing a *prima facie* case for a summary judgment. If the movant carries this burden, the party opposing the motion must come forward with specific facts to demonstrate that a genuine issue of material fact does exist. *Hiltz v. Robert W. Horn, P.C.,* 910 P.2d 566, 569 (Wyo.1996). "Summary judgment is not favored in negligence actions and is subject to more exacting scrutiny. However, even in negligence actions, summary judgment may be appropriate, especially if a plaintiff cannot establish the existence of a duty on the part of a defendant." *Duncan v. Town of Jackson,* 903 P.2d 548, 551 (Wyo.1995) (citation omitted).

"If the evidence is subject to conflicting interpretations or reasonable minds might differ as to its significance, summary judgment is improper." *Weaver v. Blue*

*Cross–Blue Shield,* 609 P.2d 984, 987 (Wyo. 1980). However, "[t]he motion for summary judgment should be sustained in the absence of a real and material fact issue considering movant's burden, respondent's right to the benefit of all favorable inferences and any reasonable doubt, with credibility questions to be resolved by trial." *Cordova v. Gosar,* 719 P.2d 625, 640 (Wyo.1986). We do not accord deference to the district court's decision on issues of law. *Ahearn v. Tri–County Federal Sav. Bank,* 948 P.2d 896, 897 (Wyo. 1997).

### DISCUSSION

■■■ We first consider whether the officers in question had a legally enforceable duty or obligation to arrest Mr. Arlint. It is well settled that in order to establish a cause of action in tort there must first be a "duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Duke v. Housen,* 589 P.2d 334, 341 (Wyo.1979); *Prosser and Keeton on The Law of Torts,* § 30, p.164 (5th ed.1984). A recent law review article presents a cogent analysis concerning the difference between a peace officer's general authority and legal duties which give rise to tort liability.

> A tort is a breach of a duty imposed by law. The general duties of a law enforcement officer are provided by statute and obligate the officer to maintain public order and to make arrests for violation of the laws of the state or the ordinances of any municipality. The statutes provide the **boundaries** of the police function but do not explain where tort liability may arise.

Stephen R. McAllister & Peyton H. Robinson, *The Potential Civil Liability of Law Enforcement Officers and Agencies,* 67–Sep. J. Kan. B.A. 14, 16–17 (1998) (emphasis added). We have not considered this question in the past, and in so doing we now look first to Wyoming's statutory scheme.

Wyo. Stat. Ann. § 7–2–102 (Lexis 1999), relating to arrests, provides:

> (b) A peace officer **may** arrest a person without a warrant when:

> (i) Any criminal offense is being committed in the officer's presence by the person to be arrested;

> . . .

> (iii) The officer has probable cause to believe that a misdemeanor has been committed, that the person to be arrested has committed it and that the person, unless immediately arrested:

>> (A) Will not be apprehended;

>> (B) May cause injury to himself or others or damage to property; or

>> (C) May destroy or conceal evidence of the commission of the misdemeanor.

(Emphasis added.) According to this statute, arrest is discretionary even when the officer has probable cause and the person to be arrested "[m]ay cause injury to himself or others."

Wyo. Stat. Ann. § 7–2–103 (Lexis 1999) goes on to state:

> (b) A person may be released if, after investigation, it appears that the person:

> (i) Does not present a danger to himself or others[.]

One might reasonably argue that a person who is drunk and in possession of a motor vehicle automatically presents a danger to himself or others. Apparently, however, the legislature believes otherwise or it would have made arrest mandatory under such circumstances in § 7–2–102. It did not do so.

Wyo. Stat. Ann. § 31–5–1204(d) (Lexis 1999) provides:

> Whenever any person is halted by a police officer for any violation of this act . . . the person shall, **in the discretion of the officer,** either be given a traffic citation or be taken without unnecessary delay before the proper judge. . . .

(Emphasis added.) The term "this act" refers to §§ 31–5–101 through 31–5–1214, which includes Wyoming's drunk driving statute, Wyo. Stat. Ann. § 31–5–233. Finally, Wyo. Stat. Ann. § 31–5–1205(k) (Michie 1997) specifically allows the officer discretion to arrest, cite or issue a summons for violation of § 31–5–233.

Obviously, the statutes authorize officers to arrest and detain drunk drivers. However, none of the statutes mandate the arrest of such persons. To the contrary, the statutes emphasize officer discretion in determining the appropriate action to take with drunk drivers.

In *Keehn v. Town of Torrington,* 834 P.2d 112, 115–16 (Wyo.1992) we stated:

> Subsumed within the general duty to apprehend, arrest, and remove drunk drivers from Wyoming's roadways is the duty to investigate potential DWUI violations. This brings us to the precise duty issue raised by this appeal: What is the nature and extent of a peace officer's duty to investigate a potential DWUI violation when, during an unrelated traffic stop, it is reasonably suspected that the driver has been drinking alcoholic beverages. While this case presents the opportunity to define specifically a peace officer's duty in this respect, we decline to do so both on the ground that it is beyond our arena of expertise and on the ground that rigid rules are not consistent with the realities of law enforcement. Consequently, we resort to traditional tort principles and hold that a peace officer's duty to investigate a potential DWUI violation during an unrelated traffic stop is dictated by what a reasonable peace officer of ordinary prudence would do under like circumstances.

*Keehn* bypassed the precise issue of whether there is a legally enforceable duty to arrest and stated simply that officers had a duty to investigate potential DUI violations. *Keehn* further recognized the fact that rigid rules are simply not compatible with the realities of law enforcement in today's society. Wyoming statutes recognize that fact as well by granting to peace officers the discretion to arrest or issue a traffic ticket as the situation, in the officer's judgment, dictates. Indeed, to impose upon peace officers the duty to arrest and detain all potential DUI violators would force police to choose between potential liability on the one hand for false arrest and on the other hand for failure to make an arrest. Such a choice would effectively paralyze the government's right to carry out its essential functions free of the threat of undue litigation. *See Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379, 1384 (1982).

We hold that the decision to arrest is a discretionary function, not mandated by Wyoming statutes, and that, in the absence of a legal duty to arrest, the negligence claim against the officers must be dismissed. Having determined that appellants' first issue is dispositive, we find it unnecessary to address the remaining issues of proximate cause and qualified immunity.

The decision of the district court is affirmed.