2006 WY 143

**Tina BECKER, Individually, and in her capacity as Personal Representative of the Estate of Zachary Tyler Becker, Deceased, Appellant (Plaintiff),**

v.

**Don MASON; and Board of County Commissioners of the County of Sweetwater, a governmental entity, Appellees (Defendant).**

No. 05–219.

Supreme Court of Wyoming.

Nov. 9, 2006.

Representing Appellant: Timothy W. Miller of Casper, Wyoming.

Representing Appellees: Patrick J. Crank, Attorney General; John W. Renneisen, Deputy Attorney General; and John D. Rossetti, Senior Assistant Attorney General, for Appellee Don Mason, and Richard Rideout of Law Offices of Richard Rideout, P.C., Cheyenne, Wyoming, for Appellee Board of County Commissioners. Argument by Messrs. Rossetti and Rideout.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] This is an appeal from a district court's dismissal of a wrongful death action on the ground that the appellee deputy sheriff did not owe the appellant's decedent a duty of care under the circumstances of this case. We reverse and remand for further proceedings consistent herewith.

## ISSUE

[¶ 2] Whether, under the circumstances of this case, the appellee deputy sheriff had a duty to exercise reasonable care to protect the appellant's decedent.

## FACTS

[¶ 3] During the evening of October 24, 2003, Glenn Towner and Mary Brandes were at horse corrals north of Rock Springs, Wyoming. Towner was extremely intoxicated, having consumed nearly a case of beer throughout the day. At around 8:00 p.m., a horse knocked Brandes to the ground, causing her to hit her head and lose consciousness. An ambulance was called to the scene, and Sweetwater County Deputy Sheriff Don Mason also responded.

[¶ 4] Towner told Mason that he had been drinking, but that he wanted to go to the hospital to be with Brandes. Mason noted that Towner appeared to be intoxicated, but did not arrest him or make any effort to prevent him from driving. Towner got into a vehicle and drove toward the hospital. About two miles down the road, his vehicle veered off the right side of the road, he overcorrected to the left, crossed the centerline, and collided with a vehicle in which fourteen-year-old Zachary Tyler Becker was a passenger. Becker was killed.

---

* Chief Justice at time of oral argument.

## STANDARD OF REVIEW

[¶ 5] Both appellees filed motions to dismiss under W.R.C.P. 12(b)(6) alleging failure to state a claim upon which relief can be granted. Our standard for review of such a dismissal is well known: (1) we accept the facts stated in the complaint as true and view them in the light most favorable to the appellant; (2) we sustain the dismissal only if it is certain from the face of the complaint that the appellant cannot assert any facts that would entitle him to relief; (3) we employ the same standards and examine the same materials as did the district court; and (4) such review is *de novo*. See *Askvig v. Wells Fargo Bank Wyo., N.A.*, 2005 WY 138, ¶ 10, 121 P.3d 783, 787 (Wyo.2005); *Ballinger v. Thompson*, 2005 WY 101, ¶ 9, 118 P.3d 429, 433 (Wyo.2005); and *Bonnie M. Quinn Revocable Trust v. SRW, Inc.*, 2004 WY 65, ¶ 8, 91 P.3d 146, 148 (Wyo.2004).

## DISCUSSION

[¶ 6] Our focus will be upon the specific rationale the district court followed in dismissing the amended complaint. First, the court identified Wyo. Stat. Ann. § 1–39–112 (LexisNexis 2005) as the source of the appellees' liability, if any: "A governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties." Second, the district court noted that the evaluation of a peace officer's conduct under Wyo. Stat. Ann. § 1–39–112 requires application of general tort law principles. See *Keehn v. Town of Torrington*, 834 P.2d 112, 114 (Wyo.1992). Next, the court pointed out that the complaint alleged the tort of negligence, the elements of which cause of action are: "(1) a duty, (2) a violation of that duty, (3) which is the proximate cause of, (4) injury to the plaintiff." *MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo.1990). And finally, the court stated the well-known principles that the question of whether or not a duty exists is a question of law for the court, and duty may arise via contract, statute, or the common law. See *Downtown Auto Parts, Inc. v. Toner*, 2004 WY 67, ¶ 8, 91 P.3d 917, 919 (Wyo.2004); and *Natrona County v. Blake*, 2003 WY 170, ¶ 6, 81 P.3d 948, 951 (Wyo. 2003).

[¶ 7] The district court resolved this case in favor of the appellees by declaring that the deputy sheriff had no legally enforceable duty or obligation to detain or arrest Towner. In reaching that conclusion, the court relied upon *McCoy v. Crook County Sheriff's Dep't*, 987 P.2d 674, 677 (Wyo.1999). Because *McCoy* was central to the district court's reasoning, we will review it in detail.

[¶ 8] At about 9:30 p.m. on June 16, 1994, the Crook County Sheriff's Office received a telephonic complaint that someone was "hotrodding" a motorbike around the town of Hulett. A deputy sheriff responded and observed Joe Arlint on a motorbike, speeding 44 m.p.h. in a 30 m.p.h. zone. The deputy stopped Arlint, who was loud, uncooperative, and verbally abusive. Hulett's chief-of-police then arrived as backup. Despite subsequent medical evidence and other testimony indicating Arlint was drunk, neither officer observed behavior that indicated such to them. *Id.* at 675–76. Arlint was issued four traffic tickets—speeding, no driver's license in possession, no registration, and no insurance—but he was not arrested, the officers did not impound the motorbike, and they did not take the keys. Instead, they told Arlint to park the motorbike and walk home. *Id.* at 676. The officers then left. Some time later that night, Arlint was seriously injured in an accident on the motorbike. He died four months later from those injuries. *Id.*

[¶ 9] Arlint's mother brought a wrongful death action against the officers, alleging that they had a duty to arrest Arlint for driving while under the influence. The district court granted summary judgment to the officers on three grounds: (1) the officers owed no duty to Arlint; (2) the doctrine of qualified immunity applied to protect the officers; and (3) the officers' negligence, if any, was not the proximate cause of Arlint's death. *Id.* at 676. On appeal to this Court, we found the first issue to be determinative under the following analysis:

We first consider whether the officers in question had a legally enforceable duty or obligation to arrest Mr. Arlint. It is well settled that in order to establish a cause of

action in tort there must first be a "duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Duke v. Housen,* 589 P.2d 334, 341 (Wyo.1979); *Prosser and Keeton on The Law of Torts,* § 30, p. 164 (5th ed.1984). A recent law review article presents a cogent analysis concerning the difference between a peace officer's general authority and legal duties which give rise to tort liability.

> A tort is a breach of a duty imposed by law. The general duties of a law enforcement officer are provided by statute and obligate the officer to maintain public order and to make arrests for violation of the laws of the state or the ordinances of any municipality. The statutes provide the **boundaries** of the police function but do not explain where tort liability may arise.

Stephen R. McAllister & Peyton H. Robinson, *The Potential Civil Liability of Law Enforcement Officers and Agencies,* 67–Sep. J. Kan. B.A. 14, 16–17 (1998) (emphasis added). We have not considered this question in the past, and in so doing we now look first to Wyoming's statutory scheme.

Wyo. Stat. Ann. § 7–2–102 (Lexis 1999), relating to arrests, provides:

> (b) A peace officer *may* arrest a person without a warrant when:
>
> (1) Any criminal offense is being committed in the officer's presence by the person to be arrested;
>
> \* \* \*
>
> (iii) The officer has probable cause to believe that a misdemeanor has been committed, that the person to be arrested has committed it and that the person, unless immediately arrested:
>
> (A) Will not be apprehended;
>
> (B) May cause injury to himself or others or damage to property; or
>
> (C) May destroy or conceal evidence of the commission of the misdemeanor.

(Emphasis added). According to this statute, arrest is discretionary even when the officer has probable cause and the person

to be arrested "[m]ay cause injury to himself or others."

Wyo. Stat. Ann. § 7–2–103 (Lexis 1999) goes on to state:

> (b) A person may be released if, after investigation, it appears that the person:
>
> (i) Does not present a danger to himself or others[.]

One might reasonably argue that a person who is drunk and in possession of a motor vehicle automatically presents a danger to himself or others. Apparently, however, the legislature believes otherwise or it would have made arrest mandatory under such circumstances in § 7–2–102. It did not do so.

Wyo. Stat. Ann. § 31–5–1204(d) (Lexis 1999) provides:

> Whenever any person is halted by a police officer for any violation of this act ... the person shall, *in the discretion of the officer,* either be given a traffic citation or be taken without unnecessary delay before the proper judge....

(Emphasis added.) The term "this act" refers to §§ 31–5–101 through 31–5–1214, which includes Wyoming's drunk driving statute, Wyo. Stat. Ann. § 31–5–233. Finally, Wyo. Stat. Ann. § 31–5–1205(k) (Michie 1997) specifically allows the officer discretion to arrest, cite or issue a summons for violation of § 31–5–233.

Obviously, the statutes authorize officers to arrest and detain drunk drivers. However, none of the statutes mandate the arrest of such persons. To the contrary, the statutes emphasize officer discretion in determining the appropriate action to take with drunk drivers.

*Id.* at 677–78.

[¶ 10] In reaching our conclusion in *McCoy,* we discussed the related concept of an officer's duty to *investigate potential* DWUI offenses:

> In *Keehn v. Town of Torrington,* 834 P.2d 112, 115–16 (Wyo.1992), we stated:
>
> > Subsumed within the general duty to apprehend, arrest, and remove drunk drivers from Wyoming's roadways is the duty to investigate potential DWUI violations. This brings us to the precise

duty issue raised by this appeal: What is the nature and extent of a peace officer's duty to investigate a potential DWUI violation when, during an unrelated traffic stop, it is reasonably suspected that the driver has been drinking alcoholic beverages. While this case presents the opportunity to define specifically a peace officer's duty in this respect, we decline to do so both on the ground that it is beyond our arena of expertise and on the ground that rigid rules are not consistent with the realities of law enforcement. Consequently, we resort to traditional tort principles and hold that a peace officer's duty to investigate a potential DWUI violation during an unrelated traffic stop is dictated by what a reasonable peace officer of ordinary prudence would do under the circumstances.

*Keehn* bypassed the precise issue of whether there is a legally enforceable duty to arrest and stated simply that officers had a duty to investigate potential DUI violations. *Keehn* further recognized the fact that rigid rules are simply not compatible with the realities of law enforcement in today's society. Wyoming statutes recognize that fact as well by granting to peace officers the discretion to arrest or issue a traffic ticket as the situation, in the officer's judgment, dictates. Indeed, to impose upon peace officers the duty to arrest and detain all potential DUI violators would force police to choose between potential liability on the one hand for false arrest and on the other hand for failure to make an arrest. Such a choice would effectively paralyze the government's right to carry out its essential functions free of the threat of undue litigation. *See Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379, 1384 (Conn.1982).

*Id.* at 678.

[¶ 11] The appellant contends that the district court's reliance upon *McCoy* was misplaced because *McCoy* only answered the question of whether the statutory *authority*

to arrest a person for DWUI also created a statutory *duty* to arrest that person. Instead, the appellant reasons that the officer's duty in the instant case arose out of his obligation under the common law to do what a reasonable peace officer would have done under the circumstances. First, the appellant cites the above-quoted language from *Keehn,* in particular this Court's statement that "a peace officer's duty to investigate a potential DWUI violation during an unrelated traffic stop is dictated by what a reasonable peace officer of ordinary prudence would do under like circumstances." *Keehn,* 834 P.2d at 116. Next, the appellant cites *Brown v. Avery,* 850 P.2d 612, 615 (Wyo.1993), where we said:

In its facts, as disclosed by the record, this case resembles *Keehn.* In *Keehn,* we analyzed the conduct of the police officers under traditional negligence principles, and we held a police officer's duty in assessing a person's fitness to drive a vehicle is to act as a reasonable police officer under the existing circumstances.

We resolved *Brown,* as had the district court, not by finding no duty on the part of the officer, but by finding that, even if we assumed the officer was negligent, the record was insufficient to justify a finding that the officer's conduct was the proximate cause of the plaintiff's injuries.[1]

[¶ 12] Finally, the appellant points out several other cases in which this Court measured police officers' conduct under the common law's reasonable person standard: *Blake,* 2003 WY 170, ¶¶ 19–24, 81 P.3d at 957–58 (duty found in alleged negligent supervision of prisoner who committed murder two days after escaping from county jail); *Bd. of County Comm'rs ex rel. Teton County Sheriff's Dept. v. Bassett,* 8 P.3d 1079, 1082–85 (Wyo.2000) (officers' alleged negligence in setting up roadblock to stop fleeing suspect measured by common law tort standard of *Keehn*); *Duncan v. Town of Jackson,* 903 P.2d 548, 552 (Wyo.1995) (peace officers responding to report of accident, if acting with-

---

1. Brown was injured in a car accident that occurred about an hour after the driver of the vehicle in which she was a passenger was stopped by police, but the driver was not given field sobriety tests or arrested despite the fact that the officer could smell the odor of alcohol coming from him during the traffic stop.

in the scope of their duties, "have a common law duty to act as reasonable peace officers of ordinary prudence under like circumstances"); and *DeWald v. State*, 719 P.2d 643, 649–50 (Wyo.1986) (so long as officer does not violate duty of due care in operating his own vehicle in a high-speed chase, his conduct is not the proximate cause of harm that occurs to a third person involved in a collision with the fleeing suspect).

▮ [¶ 13] Neither appellee suggests that, in the instant case, Mason's duty, if any, to protect the deceased from Towner should not be measured under common law tort principles. In fact, they both concede that, in the law enforcement context, negligence is the failure to act as a reasonable peace officer of ordinary prudence would act under like circumstances. However, in stating the issue, both appellees limit that issue to the question of whether or not Mason had a duty to *arrest* Towner. They then find *McCoy* to be dispositive of that issue, with the answer being in the negative. The appellees' reasoning is that, if an officer's decision whether or not to arrest in a DWUI situation, even where probable cause to arrest exists, is discretionary and cannot form the basis for a tort duty, then surely the same is true in the present circumstances, where a traffic stop had not even occurred. Generally, they contend that, in the DWUI context, *McCoy* has claimed the field.

[¶ 14] We are inclined to believe that *Keehn*, rather than *McCoy*, dictates the result in this case. Or perhaps more accurately stated, while *McCoy* held that, in the DWUI situation, the statutory authority to arrest did not create a statutory duty to arrest, it did not reverse *Keehn's* holding that "a peace officer's duty to investigate a potential DWUI violation during an unrelated traffic stop is dictated by what a reasonable peace officer of ordinary prudence would do under the circumstances." *Keehn*, 834 P.2d at 116. The law in Wyoming is that existing circumstances may create a duty on the part of the officer to investigate a potential DWUI. This case should not have been dismissed for failure to state a claim upon which relief can be granted. It is not clear from the pleadings that the appellant will be

unable to state any facts to support a negligent investigation allegation. The complaint did not just allege failure to arrest; rather, it alleged numerous failures, such as the failure to determine how Towner intended to travel to the hospital, the failure to determine whether Towner was fit to drive, the failure to provide or obtain transportation for Towner, the failure to otherwise restrain Towner, the failure to prevent Towner from driving, and the failure to monitor Towner's whereabouts.

## CONCLUSION

[¶ 15] Upon arriving at the horse corrals and determining that the intoxicated Towner intended to travel to the hospital to be with Brandes, Mason had a duty to do what an ordinarily prudent law enforcement officer would have done under like circumstances. Saying that the decision of whether or not to exercise one's statutory authority by arresting a drunk driver is discretionary, and therefore cannot form the basis for a tort claim based on negligent failure to arrest, does not answer all the questions in this case, particularly by dismissal based upon failure to state a claim upon which relief can be granted.

[¶ 16] Reversed and remanded for further proceedings consistent herewith.

HILL, Justice, dissenting, with whom GOLDEN, Justice, joins.

[¶ 17] I concur with the majority's interpretation of our prior decisions in *McCoy v. Crook County Sheriff's Department*, 987 P.2d 674 (Wyo.1999), and *Keehn v. Town of Torrington*, 834 P.2d 112 (Wyo.1992). I cannot agree, however, that the duty identified in *Keehn* may be imposed under the facts alleged in the Complaint.

[¶ 18] As the majority notes, *Keehn* held that "a peace officer's duty to investigate a potential DWUI violation during an unrelated traffic stop is dictated by what a reasonable peace officer of ordinary prudence would do under like circumstances." 834 P.2d at 115–16. Constitutionally, a "peace officer may temporarily detain an individual for the purpose of investigation only when he has a

reasonable suspicion, based on all the circumstances, that criminal activity 'may be afoot.'" 834 P.2d at 116 (citing *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968)). Clearly, a reasonable peace officer of ordinary prudence would not detain an individual in circumstances inconsistent with constitutional dictates. Accordingly, whether a duty to investigate a potential DWUI violation has arisen is dependent upon the existence of a reasonable suspicion that a crime had been or was being committed.

[¶ 19] The existence of a reasonable suspicion is the critical difference between *Keehn* and this case. In *Keehn,* the duty arose out of a police-citizen contact during a traffic stop. In the course of the stop certain facts were observed that gave rise to a reasonable suspicion that the citizen was operating a motor vehicle while driving under the influence in violation of Wyoming statute. As alleged in this case, Towner was not operating a motor vehicle during the contact with Officer Mason. The Complaint contains no allegation that Towner informed Officer Mason that he had been driving that day or that he would be driving to the hospital. The Complaint does not allege that Officer Mason observed Towner approach, enter, or drive away in a motor vehicle. In short, there are no facts alleged that would have supported a reasonable suspicion that a DWUI had been or was going to be committed, which would have justified an investigatory detention of Towner.

[¶ 20] I believe that application of the duty to investigate a DWUI under the facts alleged in this case would greatly expand the scope of the duty identified in *Keehn.* The death of Zachary Becker is unquestionably tragic. However, as we said in *Keehn:*

As to the factual realities, governments simply do not have the resources to protect all citizens at all times from the consequences of all illegal or tortious activity. Consequently, law enforcement agencies and personnel must be afforded some discretion as to how to marshall [sic] their time, talents, and assets to achieve the greatest overall good. That an intoxicated driver or other law violator causes injury

to another does not, without more, necessarily mean that a governmental entity or public employee was negligent. See Wyo. Stat. § 1–39–102(b) (June 1988) (governmental entities or public employees are not subject to strict liability). Rather, the facts of each case must be independently examined.

834 P.2d at 116–17. The facts, as alleged here, do not give rise to a legally enforceable duty. I would affirm the district court's dismissal.