2009 WY 45

**Brett Alan CRAMER, Appellant (Plaintiff),**

v.

**POWDER RIVER COAL, LLC, a Delaware Limited Liability Company, f/k/a Powder River Coal Company, a Delaware Corporation, and Caballo Coal Company, a Delaware Corporation, acting through their agents, officers, employees and representatives, Appellees (Defendants).**

No. S–08–0049.

Supreme Court of Wyoming.

March 31, 2009.

Rehearing Denied April 28, 2009.

Representing Appellant: C. John Cotton, Cotton Law Offices, Gillette, Wyoming.

Representing Appellees: Billie Addleman and Richard Mincer, Hirst Applegate, PC, Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶1]   Brett Cramer brought suit against the owner and the operator of the Caballo Mine, seeking to hold them liable for damages he suffered in an accident that occurred while he was working at the mine site. The trial resulted in a jury verdict against Mr. Cramer, and the district court entered judgment against him. Mr. Cramer appeals, claiming that the district court erred in numerous pretrial and trial rulings. We conclude that no reversible errors have been demonstrated, and affirm the judgment entered by the district court.

## ISSUES

[¶2]   Mr. Cramer presents a list of seven issues for our consideration. To facilitate their discussion, we have placed them in this order:

1.   Did the district court err in granting summary judgment and denying a *Campen* motion regarding punitive damages?

2.   Did the district court err in refusing to allow evidence at trial of Defendants' policy of not maintaining, preparing, or inspecting mine property for purposes of the safety of visitors?

3.   Did the district court err in refusing discovery regarding Defendants' policy of not maintaining, preparing, or inspecting mine property for purposes of the safety of visitors?

4.   Did the district court err in dismissing Plaintiff's claim for damages for violation of duties imposed by contract?

5.   Did the district court err in refusing to allow Plaintiff's expert to testify at trial regarding the applicable standard of care

and Defendants' breach of the standard of care?

6. Did the district court err in refusing to allow Plaintiff's expert to testify at trial, following a written request from the jury, regarding Defendants' violation of MSHA provisions?

7. Did the district court violate the Wyoming Constitution and Wyoming law by applying collateral estoppel to Plaintiff's claim of cervical injuries?

### FACTS

[¶ 3] The Caballo Mine is a large surface coal mine located in Wyoming's Powder River Basin. It is owned and operated by two affiliated companies, Powder River Coal, LLC, and Caballo Coal Company (collectively "PRC"). On October 18, 2002, Mr. Cramer, an employee of Weld Test Inspection & Service, went to the Caballo Mine to perform ultrasonic testing on a large coal shovel. After some of the tests were finished, the shovel had to be moved to allow Mr. Cramer access to additional parts of the shovel. One PRC employee operated the shovel. Mr. Cramer climbed up a ladder leaned against the shovel so he could tell when the shovel had moved into the correct position. Another PRC employee was on the ground relaying Mr. Cramer's signals to the operator. As the shovel rotated, oil leaked out, and the wind blew the oil over Mr. Cramer where he stood on the ladder. He either jumped or fell from the ladder, and was injured.

[¶ 4] After the accident, a PRC employee offered to call for emergency assistance, but Mr. Cramer declined, saying that he was able to drive his truck. He drove to the hospital, where he received medical treatment for his injuries. Later, he filed a worker's compensation claim for his medical expenses. The Workers' Safety & Compensation Division awarded benefits to Mr. Cramer for the injuries to his foot and knee, but denied his claim for compensation for his neck injuries on the basis that Mr. Cramer had not proven that they were caused by his workplace accident. That decision was affirmed on appeal. *Cramer v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2005 WY 124, 120 P.3d 668 (Wyo.2005).

[¶ 5] Mr. Cramer then filed various claims against PRC in the district court. The district court granted a motion to dismiss a claim entitled "Claim for Damages for Violation of Duties Imposed by Statute, Regulation and Contract," ruling that it did not state a viable cause of action. It also dismissed Mr. Cramer's claims relating to his neck injuries on the basis that it had previously been determined in the worker's compensation case that the injury was not caused by the accident at the mine. Mr. Cramer appeals the dismissal of these two causes of action.

[¶ 6] Mr. Cramer's complaint also included a claim for punitive damages against PRC. In it, he alleged that PRC required all visitors and contractors who entered the mine site to sign a document entitled "PRCC Assumption of Risk—Release of Liability and Notice of Warning—Company Warning Visitor that the Premises may be Dangerous and Hazardous." The language of this Release will be detailed below, but in brief, it warned visitors of the possible presence of dangers and hazards, and contained a release of liability and waiver of claims against PRC. Mr. Cramer alleged that the Release violated applicable laws, regulations, and public policy, and that its use by PRC constituted willful and wanton conduct sufficient to warrant the imposition of punitive damages. Mr. Cramer appeals various rulings by the district court relating to this Release and his claim for punitive damages based on it.

[¶ 7] The case proceeded to trial on claims of negligence. The jury rendered a verdict finding Mr. Cramer 55% at fault, Powder River Coal 25% at fault, and Caballo Coal Company 20% at fault. Because Mr. Cramer was allocated more than 50% of the fault, he was denied recovery pursuant to Wyoming's Comparative Fault statute, Wyo. Stat. Ann. § 1-1-109 (LexisNexis 2007). The district court entered judgment in favor of the Defendants. Mr. Cramer appeals several decisions made by the district court on pretrial discovery issues and evidentiary questions that arose during the trial. Additional facts will be discussed as they relate to the individual issues.

## DISCUSSION

### The Release

[¶ 8]   Three issues relating to the Release are raised in Mr. Cramer's appeal.   Before considering these individual issues, we begin with an overview of the Release and the proceedings relating to it.   PRC required visitors to the mine site to sign the Release.   Contractors like Mr. Cramer were considered visitors, and Mr. Cramer had signed a copy of the Release before beginning his work at the mine site.   The Release included a provision by which the visitor:

> waives and releases and (to the extent permitted by Law) agrees to indemnify, defend, and hold harmless [PRC], their agents, and employees from and against any and all claims for injury to any person (including death) or damage to any property (including claims for exemplary damages) and litigation expenses (including reasonable attorney fees) arising from or connected in any way with Visitor's occupation or use of the premises.

The Release also contained the following language:

> WARNING! CONDITION OF PREMISES: Visitor understands that the area contains active mining operations and numerous hazardous conditions, such as rough and unstable surface, active haulage roads, open pits, blasting, operating heavy equipment and equipment shops, electrical lines and equipment, railroads and rail traffic, coal preparation and handling facilities, rattlesnakes, and other natural and artificial hazards.   The Company further warns that they have not maintained, prepared, or inspected the premises for purposes of Visitor.   The Company does not represent that the premises are safe or suitable for Visitor's presence on the mine property without release of liability and waiver of claims.

[¶ 9] In his initial complaint, Mr. Cramer alleged that PRC's use of the waiver and release to discourage and preclude workers from filing personal injury claims against PRC was illegal and contrary to public policy.   He appeared to anticipate that PRC would assert that Mr. Cramer's personal injury claims were barred by the Release he had signed.   That, he alleged, constituted willful and wanton conduct sufficient to justify a punitive damage claim against PRC.

[¶ 10]   From the outset, however, PRC declined to assert the waiver and release of liability as a defense to Mr. Cramer's claims.   Because it did not use the Release to discourage or preclude Mr. Cramer from bringing his claims, PRC asserted that it had not engaged in the conduct alleged to be willful and wanton, and on that basis moved to dismiss the punitive damages claim.   In conjunction with its motion to dismiss, PRC also filed a motion for protective order, asserting that it was not required to respond to Mr. Cramer's discovery requests relating to his punitive damage claim.

[¶ 11]   In response to PRC's motions, Mr. Cramer shifted the focus of his punitive damages claim away from the waiver and release of liability, and toward the statement in the Release that "The Company further warns that they have not maintained, prepared, or inspected the premises for purposes of Visitor."   He insisted that this statement in the Release represented a written company policy not to maintain the mine site so it was safe for visitors.   The existence of this policy, Mr. Cramer asserted, was sufficiently egregious to warrant punitive damages.   The district court allowed Mr. Cramer to amend his complaint in an effort to reflect and clarify this new basis for the punitive damages claim.

[¶ 12]   PRC consistently asserted that the Release did not reflect a company policy, but rather a warning that hazards existed on the mine site.   When questioned about the form, one PRC representative provided this explanation:

> I think it's fair to say that when we enter into a contract with someone, we tell them that we are doing, with regard to the premises, that which is required by law; and they do what is required by them by law; and we're not undertaking any additional responsibilities.... I'm not sure that "policy" is the right word but [the Release] warns people that come on the property that the area is—contains active mining operations, and hazards.   And I

think its intention likely was, when it was drafted, to tell people that we're not assuming any additional obligations with regard to you, other than those that are already imposed on us by law.

[¶ 13] Throughout pretrial proceedings, the parties sharply disputed the meaning and significance of the Release. Their disagreements were raised before the district court numerous times in the context of discovery disputes and motion hearings. As a result, the district court issued several different rulings and decisions regarding the Release. Because these rulings are interrelated, it can be difficult to separate out for analysis the individual issues listed in Mr. Cramer's appeal. However, we will consider in turn each of the three issues raised by Mr. Cramer.

### Issue 1: Limiting discovery concerning PRC's financial status and ruling that Mr. Cramer could not present his punitive damages claim to the jury

[¶ 14] As noted above, PRC filed motions for protective orders, asserting that it should not be forced to respond to Mr. Cramer's discovery requests for financial information relating to his punitive damages claim. The district court eventually granted protective orders to PRC, and Mr. Cramer appeals that decision. Because "the trial court has broad discretion in controlling discovery," we review decisions relating to discovery for abuse of discretion. *Global Shipping & Trading v. Verkhnesaldincky Metallurgic Co.*, 892 P.2d 143, 145 (Wyo. 1995).

[¶ 15] PRC's motions referred to the case of *Campen v. Stone*, 635 P.2d 1121, 1132 (Wyo.1981), in which we adopted an "approach and procedure for the discovery and presentation of evidence of financial status of a defendant when punitive damages are sought." The first two steps in that procedure are as follows:

1. The plaintiff may claim in his complaint a right to punitive damages and then seek pretrial discovery of a defendant's wealth.
2. Defendant may move for a protective order requiring the plaintiff to make a prima facie showing to the trial court that

a viable issue exists for punitive damages. Upon such a showing, the pretrial discovery would be allowed.

*Id.*

[¶ 16] In response to PRC's motions, Mr. Cramer submitted a brief "in connection with the prima facia [sic] showing under *Campen v. Stone*," in which he claimed that PRC's "conduct in connection with this matter is appalling." He asserted that his injuries were "not the result of mere inadvertence on the part of [PRC], but instead resulted from [PRC's] consistent disregard of applicable safety standards." This disregard of safety was, he claimed, the result of the policy set forth in the Release against maintaining a safe mine site, and had caused or contributed to his injuries. Mr. Cramer asserted that this disregard of safety constituted wanton and willful misconduct sufficient to warrant the imposition of punitive damages. Not surprisingly, PRC disputed these claims. It maintained that Mr. Cramer had not come forward with any facts demonstrating wanton and willful misconduct on the part of PRC. The district court ruled in favor of PRC.

[¶ 17] We have explained that punitive damages "are to be awarded only for conduct involving some element of outrage, similar to that usually found in crime.... We have approved punitive damages in circumstances involving outrageous conduct, such as intentional torts, torts involving malice and torts involving willful and wanton misconduct." *Weaver v. Mitchell*, 715 P.2d 1361, 1369–70 (Wyo.1986). Willful and wanton misconduct is the intentional doing, or failing to do, an act in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know that such conduct would, in a high degree of probability, result in harm to another. *Mayflower Rest. Co. v. Griego*, 741 P.2d 1106, 1115 (Wyo.1987). "The aggravating factor which distinguishes willful misconduct from ordinary negligence is the actor's state of mind. In order to prove that an actor has engaged in willful misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do harm."

*Bryant v. Hornbuckle,* 728 P.2d 1132, 1136 (Wyo.1986) (internal citation omitted).

[¶ 18] Our gleaning of the record yielded, in addition to the language of the Release, the following list of facts asserted by Mr. Cramer in support of his punitive damages claim: (1) PRC violated federal regulations by failing to designate a representative to inspect for hazardous conditions once per shift; (2) PRC violated federal regulations by operating the shovel "in the presence of any person exposed to a hazard from its operation," *i.e.* Mr. Cramer; (3) PRC provided inadequate safety training to its employees; (4) the PRC employees involved in Mr. Cramer's injury did not have an immediate supervisor that day; (5) PRC's employees had done work on the shovel that allowed the oil to spill out, and knew or should have known that it could happen again; (6) the PRC employees directed Mr. Cramer to climb up the ladder to help reposition the shovel; (7) oil spilled on Mr. Cramer while he was on the ladder; and (8) Mr. Cramer fell or slipped off of the ladder and was injured as a result.

[¶ 19] If proven, these facts could be sufficient to support a claim of ordinary negligence, the claim ultimately rejected by the jury. But even if proven, and even in conjunction with the Release language, these facts do not demonstrate outrageous conduct, willful and wanton misconduct, or a state of mind approaching intent to do harm. The facts are insufficient to justify punitive damages, and so we agree with the district court that Mr. Cramer failed to make a *prima facie* showing of a viable punitive damages claim. On that basis, we affirm the district court's decision to deny Mr. Cramer's efforts to obtain discovery concerning PRC's financial status.

[¶ 20] At the same hearing in which the district court heard argument pursuant to the *Campen* procedures, it also considered PRC's motion for summary judgment against Mr. Cramer's punitive damages claim. On the basis that Mr. Cramer did not make a *prima facie* showing that he was entitled to punitive damages, the district court also granted PRC's motion. The facts asserted by Mr. Cramer, even if proven, would not be sufficient to support an award of punitive damages, so it follows that Mr. Cramer did not raise genuine issues of material fact with regard to his punitive damages claim. PRC was entitled to judgment as a matter of law on this claim, and the district court did not abuse its discretion in ruling that Mr. Cramer could not present his punitive damages claim to the jury.

## Issue 2: Exclusion of the Release from evidence

[¶ 21] As stated above, the Release was the subject of numerous disputes. At one point, the district court had before it PRC's motion for a protective order and Mr. Cramer's contrary motion to compel discovery of information relating to the punitive damages claim. The district court ruled that the Release "does not amount to a declaration of policy on the part of Defendants or an admission that they do not maintain a safe mine site. Nor is it evidence of same." (Footnote omitted.) As the district court further explained:

> At best, the release form is a misguided effort to facially insulate Defendants from liability for damages to non-employee third parties. At worst, it is an undisguised attempt to forestall and even perhaps intimidate such individuals against filing suit for damages sustained on mine property. *In either event, the release form does not bespeak a policy to maintain an unsafe mine site.* Other language in the release form tends to this conclusion.

(Emphasis added.) On this same basis, the district court later issued its Memorandum of Pretrial Conference, expressly limiting Mr. Cramer's use of the Release as evidence at trial:

> [T]he court determines the release form may not be used in Plaintiff's case-in-chief because it is of marginal relevance and has the potential to mislead and confuse the jury—even if otherwise admissible. *See* W.R.E. 403. However, Plaintiff may be entitled to use the release form in cross-examination. On this question the court RESERVES RULING.

On appeal, Mr. Cramer challenges the district court's refusal to allow the Release into evidence in his case-in-chief.

[¶ 22] We review a district court's decisions regarding evidence for abuse of discretion:

> Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice.... In the absence of an abuse of discretion, we will not disturb the trial court's determination.

*Teniente v. State*, 2007 WY 165, ¶ 54, 169 P.3d 512, 529 (Wyo.2007) (internal citations and punctuation omitted).

[¶ 23] We begin by considering the district court's conclusion that the Release was "of marginal relevance." W.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Evenson v. State*, 2008 WY 24, ¶ 26, 177 P.3d 819, 827 (Wyo.2008). Regardless of whether the Release reflected a company policy against maintaining a safe mine site, it was a statement made by PRC that, when considered by the jury, could tend to make it more likely that PRC had breached its duty of taking reasonable precautions to protect visitors from foreseeable hazards. On this basis, the Release does appear to have been relevant evidence.

[¶ 24] But not all relevant evidence is admissible. W.R.E. 403 provides that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The district court excluded the Release from evidence on the basis that it was potentially misleading and confusing to the jury. Like the issue of relevance, "the balancing of prejudice against probative worth is ordinarily a discretionary matter for the trial court." *Miller v. State*, 784 P.2d 209, 211 (Wyo.1989).

[¶ 25] We have reviewed the parties' numerous pretrial arguments about the Release, and observe that the arguments themselves suggest that the Release had the potential to confuse and mislead the jury. For example, Mr. Cramer often asserted that the Release was "illegal." The jury could have been misled into speculation about whether PRC had been or should be subject to civil penalties, or even criminal sanctions. The jury might also have been confused about why Mr. Cramer was bringing a negligence claim against PRC when he had signed the Release with an explicit waiver and release of liability. In either example, the jury's attention would have been diverted from the negligence claim it was asked to decide. The district court might have tried to overcome the confusion with jury instructions, but given its conclusion that the Release was only marginally relevant, it was not unreasonable for the district court instead to exclude the Release from evidence pursuant to W.R.E. 403.

### Issue 3: Limiting discovery regarding the Release

[¶ 26] Before ruling that the Release was not admissible, the district court had granted a number of PRC's motions for protective orders, and denied some of Mr. Cramer's motions to compel discovery regarding the Release. On appeal, Mr. Cramer challenges these limitations on his discovery. Again, we review the district court's discovery decisions for abuse of discretion.

[¶ 27] The district court's decision that the Release was inadmissible does not, by itself, mean that Mr. Cramer could not attempt to discover information about the Release. Discovery is allowed not only for admissible information, but also for information "reasonably calculated to lead to discovery of admissible evidence." W.R.C.P. 26(b)(1). For the most part, however, Mr. Cramer has not specified the discovery information he was unable to obtain, and so has not ex-

plained how that information was reasonably calculated to lead to discovery of admissible evidence.

[¶ 28] The district court ruled that PRC would not be required to answer a number of interrogatories, requests for admissions, and requests for production of documents relating to the Release. Nowhere in Mr. Cramer's brief does he specify which of those discovery requests he claims PRC should have been required to answer, nor does he suggest how discovering that information might have helped his case. We combed though the record, and learned that several of the discovery requests not answered by PRC related to PRC's financial status. As previously reviewed, Mr. Cramer was not entitled to discover this information because he did not make a *prima facie* showing of a viable punitive damages claim.

[¶ 29] Other discovery requests not answered by PRC included questions about who drafted the language and when, how many visitors had signed the Release over the years, what their names were, how many of them had been injured, and how many of them filed or failed to file claims against PRC. The information sought by these discovery requests may have been relevant to Mr. Cramer's punitive damages claim as first presented—that is, to his claim that PRC's use of the Release to discourage and prevent personal injury claims was illegal. But in connection with the punitive damages claim set forth in his amended complaints—that is, that the Release represented company policy that caused or contributed to Mr. Cramer's injuries—he does not explain how the answers might have led to admissible evidence. The information would not have helped Mr. Cramer establish that the actions of PRC's employees conformed to the statements in the Release, so that the Release caused or contributed to the injuries suffered by Mr. Cramer.

[¶ 30] Mr. Cramer does specify certain deposition questions that he claims should have been answered. Pursuant to W.R.C.P. 30(b)(6), PRC designated a witness to testify "regarding punitive damage issues." Early in the deposition, the parties renewed their disagreement about what discovery was ap-propriate concerning the Release. They telephoned the district court, who ruled that Mr. Cramer was "entitled to inquire about what you believe is the policy reflected by that form," but that he could not ask questions about the "history of the form." More specifically, the district court allowed Mr. Cramer's counsel to ask, with regard to the Release, "Is this your policy?" In response to that question, the witness indicated that it was not a policy.

[¶ 31] Counsel for Mr. Cramer attempted to follow up with questions such as "[W]as the form and the statements in it reviewed by Powder River Coal management before implementation of the form?" and "Do you know why PRC adopted the statements in the form that they would not, quote, 'Maintain, prepare, or inspect the premises for purposes of the safety of employees of third parties'?" These questions relate directly to the "history of the form," and the district court had already ruled that PRC did not have to respond to such questions. In another telephone conference held while the deposition was in progress, the district court reaffirmed that the PRC witness was not required to answer these questions.

[¶ 32] Mr. Cramer has not shown that the district court erred in this ruling, because he has not shown how the answers to questions about the history of the Release might have yielded or led to admissible evidence. On the other hand, Mr. Cramer was able to depose the PRC employees involved with the incident, but did not discover any evidence connecting the Release to their actions on the day of the accident. He conducted considerable discovery relating to PRC's policies and practices on inspecting and maintaining the mine site, dealing with oil spills and slipping hazards, compliance with MSHA regulations, and the like, but did not discover any evidence that the statements in the Release had influenced the actions of PRC employees. Under those circumstances, the district court did not abuse its discretion in ruling that PRC was not required to respond to Mr. Cramer's discovery requests about the history of the Release.

*Issue 4: Claim for "damages for violation of duties imposed by contract"*

[¶ 33] In his amended complaint, Mr. Cramer pleaded a third cause of action he entitled "Claim for Damages for Violation of Duties Imposed by Statute, Regulation and Contract." In it, he alleged that PRC's policies, practices, and procedures violated the federal Mine Safety and Health Act, 30 U.S.C. 801 (MSHA), and regulations promulgated under that Act. He also alleged that PRC's conduct violated duties imposed "by statute, law, regulation, contract, as well as by the Wyoming Constitution." While no particular contract was identified in this cause of action, it appears from later pleadings that Mr. Cramer's claim related to alleged violations of duties imposed by PRC's federal coal leases. There are several such leases covering the Caballo Mine, and within them are various provisions setting forth obligations such as a duty to "maintain a safe working environment" and to "carry on all operations ... having due regard for the prevention of injury to life, health, or property."

[¶ 34] PRC moved to dismiss this cause of action. The district court granted the motion, explaining that it was "unable to locate anywhere a recognized claim such as the one listed as Plaintiff's Third Cause of Action." Upon dismissing this as a "stand alone" claim, the district court also stated that:

> Evidence of the Defendants' alleged implementation of what the Plaintiff feels are illegal policies, practices and procedures may go to demonstrating the standard of care, as the MSHA regulations may be used to demonstrate that the Defendant[s] owed some duty of care to this Plaintiff. Therefore, the court is not foreclosing use of the evidence ... for purposes of establishing a duty and/or standard of care.

In his appeal brief, Mr. Cramer indicates that he is not appealing the district court's decision with regard to duties imposed by statute or regulation. That is because, at trial, the district court allowed Mr. Cramer to present evidence concerning certain MSHA regulations, and instructed the jury that regulatory violations could be used as evidence in support of Mr. Cramer's negligence claim. What Mr. Cramer does challenge on appeal is the district court's decision to dismiss his cause of action relating to duties imposed by contract.

[¶ 35] We review a district court's grant of a motion to dismiss using this standard:

> When reviewing W.R.C.P. 12(b)(6) motions to dismiss, we accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff. We will sustain such a dismissal when it is certain from the face of the complaint that the plaintiff cannot assert any fact which would entitle him to relief.

*Ballinger v. Thompson,* 2005 WY 101, ¶ 9, 118 P.3d 429, 433 (Wyo.2005) (internal citation omitted).

[¶ 36] "It is hornbook law," Mr. Cramer contends in his brief, "that a duty may arise by contract." In support of that contention, he cites three Wyoming cases, all of which contain language very much like this:

> There are four elements to a negligence cause of action: (1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the defendant's breach of the duty of care proximately caused injury to the plaintiff; and (4) the injury sustained by the plaintiff is compensable by money damages. Whether a duty exists is a question of law for the court and may arise based upon common law, contract or statute.

*Downtown Auto Parts, Inc. v. Toner,* 2004 WY 67, ¶ 8, 91 P.3d 917, 919 (Wyo.2004) (internal citation omitted); see also *Becker v. Mason,* 2006 WY 143, ¶ 6, 145 P.3d 1268, 1270 (Wyo.2006); *Natrona County v. Blake,* 2003 WY 170, ¶ 6, 81 P.3d 948, 951 (Wyo. 2003). All three cases support the proposition that a contract may give rise to a duty, and that duty is one of the elements of a negligence claim. They do not support Mr. Cramer's contention that PRC's alleged breach of contract provided him a basis for pursuing a separate tort claim against PRC apart from the negligence claims he pursued at trial. The cases cited by Mr. Cramer do

not establish that the district court erred in dismissing this claim as a separate cause of action.

[¶ 37] What these cases do support is the district court's decision that a contractual breach may be used as evidence to support a negligence claim. The district court had explicitly stated that it was not foreclosing the use of such evidence for purposes of establishing a duty or standard of care. As noted above, Mr. Cramer did present evidence at trial suggesting that PRC had violated certain regulations, and used that as evidence to support his negligence claim against PRC. In contrast, he never attempted to offer into evidence any contract or lease that might have established PRC's duty or standard of care, nor did he offer any evidence that PRC had breached any contractual obligations. The district court's ruling did not preclude Mr. Cramer from introducing evidence that PRC may have violated duties imposed by contract, and accordingly, we cannot conclude that the ruling was in error.

### Issue 5: Expert testimony regarding whether PRC violated applicable regulations

[¶ 38] In his pretrial memorandum, Mr. Cramer designated an expert witness to testify about applicable safety standards, chiefly the MSHA regulations at 30 CFR §§ 77.1713 and 77.409. The expert was also designated to offer his opinion that PRC had violated those standards. PRC designated counter experts to offer opinions that PRC had not violated the MSHA standards. On the parties' cross motions to limit the experts' testimony, the district court allowed the experts to testify about the safety standards. It did not allow the experts for either side to present opinions on whether PRC had violated or complied with those standards. Mr. Cramer appeals that decision. As noted above, we review evidentiary rulings for abuse of discretion.

[¶ 39] Mr. Cramer claims that the district court improperly limited his expert's testimony on the regulations and the applicable

standard of care. That claim is not borne out by the record. The district court allowed the expert to testify about the general regulatory framework of MSHA, and about the specific regulations pertinent to the case. It allowed the expert to explain the regulations, if necessary, and to indicate their application to PRC. The record establishes that the district court allowed all of the expert testimony offered by Mr. Cramer dealing with the regulations and the standard of care.

[¶ 40] The district court did, however, exclude the expert's opinion on whether PRC violated the MSHA regulations. In excluding this testimony, the district court commented that it "invades the province of the jury." Mr. Cramer correctly points out that, under W.R.E. 704, expert testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." On that basis, he claims that the district court erred in limiting the testimony of his expert witness.

[¶ 41] When the district court's comments are placed in context, however, they indicate a different basis for limiting the expert's testimony. The district court said it had "considered the several motions to strike in connection with ... *Daubert*." This is a reference to *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), "a seminal case involving the proper foundation for admission of expert testimony." *Walters v. State,* 2008 WY 159, ¶ 8 n. 1, 197 P.3d 1273, 1276 n. 1 (Wyo.2008). The district court further explained that "there are a couple of factors that aid in determining the propriety of expert testimony, even before the *Daubert* factors come into play. And it is really on the basis of one of those factors that the Court is going to issue its ruling here." As the district court's comments suggest, *Daubert* is well-known for establishing four factors to be used in determining the admissibility of expert testimony pursuant to F.R.E. 702.[1] *Daubert,* 509 U.S. at 593–94, 113 S.Ct. at 2796–97. But as the district court's comments also indicated, the *Daubert* opinion

---

1. This federal rule is nearly identical to W.R.E. 702, and we have expressly adopted the *Daubert* analysis for use under the Wyoming Rules of Evidence. *Bunting v. Jamieson,* 984 P.2d 467, 471 (Wyo.1999).

stated that, even before applying those four factors, a "trial judge must determine at the outset" whether the expert opinion offered "will assist the trier of fact to understand or determine a fact in issue." *Id.,* 509 U.S. at 592, 113 S.Ct. at 2796.

[¶ 42] The district court noted that the regulations in question "appear pretty straightforward" and not difficult to understand. The accuracy of that comment is apparent from the text of the regulations, as quoted in the jury instructions. Instruction No. 35 read as follows:

> You are instructed that MSHA Regulation codified at 30 CFR Chapter 1, Section 77.409, states as follows: "(a) shovels … shall not be operated in the presence of any person exposed to a hazard from its operation…."

It was followed by Instruction No. 36:

> You are instructed that MSHA Regulation codified at 30 CFR Chapter 1, Section 77.1713, states as follows: "(a) At least once during each working shift, or more often if necessary for safety, each active working area and each active surface installation shall be examined by a certified person designated by the operator to conduct such examinations for hazardous conditions and any hazardous conditions noted during such examinations shall be reported to the operator and shall be corrected by the operator."

[¶ 43] When a statute or regulation establishes the applicable standard of care with reasonable clarity, "expert testimony as to that standard and its breach are unnecessary." *Hulse v. First American Title Co.,* 2001 WY 95, ¶ 60 n. 9, 33 P.3d 122, 141 n. 9 (Wyo.2001). In a case presenting a similar issue, we affirmed a district court's ruling that an expert could not give his opinion that a landlord had violated applicable building code regulations:

> A district court is vested with discretion to exclude expert testimony if it is deemed unnecessary or not helpful to the trier of the factual issues…. Whether in any given case expert testimony is necessary to aid the jury in its search for the truth depends upon a variety of factors readily apparent only to a trial court, and we must depend heavily upon its judgment.
>
> We find that the district court did not abuse its discretion in refusing to allow Lyden to present expert testimony. The proposed expert testimony involved matters that the average juror could understand. The safety of stairs, including handrails and headroom, is not so beyond an average person's experience and understanding that expert testimony is required to explain it. The district court reasonably concluded that the testimony should not be allowed, and no abuse of discretion occurred.

*Lyden ex rel. Lyden v. Winer,* 913 P.2d 451, 455–56 (Wyo.1996) (internal citations omitted). In Mr. Cramer's case, it was not unreasonable for the district court to determine that the jury could understand the regulations, and that the jury was capable of determining whether PRC's actions had violated the regulations without the need of expert opinion. Depending heavily on the district court's judgment, as exercised under the particular circumstances of this case, we conclude that the district court did not abuse its discretion when it determined that the expert opinion testimony was unnecessary and not helpful to the jury.

### Issue 6: Response to jury question

[¶ 44] As discussed above, Mr. Cramer's expert testified at trial about applicable MSHA regulations, but was precluded from offering an opinion that PRC had violated those regulations. At the end of the expert's testimony, the district court asked the jury if they had any questions for the witness. One juror submitted this written question: "In your expert opinion, did the mine violate any MSHA rules that day?" Outside the hearing of the jury, the parties repeated their positions on whether this opinion was admissible evidence. The district court also repeated its previous decision: "The Court already ruled. He is not going to testify whether or not that was a violation." The jury was then informed as follows:

> Ladies and gentlemen, there was one question propounded by a juror, but as I think the instructions that I read to you [said], there are occasions when questions are put

by jurors that cannot be asked for a legal reason, and this question falls into that category and will not be asked.

[¶ 45] Mr. Cramer challenges that ruling on appeal, and reprises his argument that the expert should have been allowed to testify that PRC had violated the MSHA regulations. We have already concluded that the district court did not abuse its discretion in ruling that the expert's opinion on this issue was inadmissible. Considering the circumstances, it was not unreasonable for the district court to maintain that position even after a juror asked the question. The district court had ruled that neither of the party's experts would be allowed to answer that question. It had said that the regulations were understandable to a jury. It knew, as the jury did not, that the regulations would be quoted in the jury instructions. The district court also knew that the jury had heard, or would hear, extensive testimony about the actions of PRC's employees relating to the accident. There was a reasonable basis for the district court to conclude that the jury was capable of determining whether PRC had violated the applicable regulations without expert opinion testimony on that issue. We find no abuse of discretion in the district court's decision to remain consistent with its prior ruling that the expert's opinion was not admissible because it was not helpful to the jury.

### Issue 7: Applying collateral estoppel to claims involving cervical injuries

[¶ 46] After his accident at the Caballo Mine, Mr. Cramer filed a worker's compensation claim to recover medical costs associated with his injuries. The Workers' Safety & Compensation Division allowed the claims for the injuries to his foot and knee, but denied his claim for neck injuries on the basis that Mr. Cramer failed to prove that it was caused by or related to his workplace accident. On appeal, we affirmed that decision. *Cramer*, 120 P.3d 668.

[¶ 47] In his suit against PRC, Mr. Cramer included claims for damages relating to his neck injury. PRC moved for partial summary judgment, asserting that the claims relating to his neck injury were barred by the doctrine of collateral estoppel. The district court granted PRC's motion for partial summary judgment, and Mr. Cramer appeals.

[¶ 48] On appeal, PRC contends that the issue is moot. Because the jury found against Mr. Cramer on the issue of liability, PRC maintains, it never reached the question of damages. It does not matter, then, if evidence about damages from the neck injury was excluded. We agree. The jury found that PRC was not liable for any of Mr. Cramer's damages, and "therefore, any issue relating solely to damages is moot." *McGuire v. Solis*, 2005 WY 129, ¶ 8, 120 P.3d 1020, 1023 (Wyo.2005).

[¶ 49] Mr. Cramer claims that the issue is not moot, however, because the jury "clearly knew that Mr. Cramer was not telling the whole story about what happened with the cervical spine," and that "could only have had a negative impact on the jury's view of his credibility." In support of this position, Mr. Cramer cites two portions of the record. The first is from pretrial proceedings in which the district court decided to instruct the jury that it "may hear evidence related to a cervical spine condition suffered by the plaintiff," but that "this condition is unrelated to the incident in which the plaintiff was involved on October 18, 2002, at the Caballo Mine." This proceeding was held outside of the jury's presence, and Mr. Cramer has not explained how it might have affected the jury's perception of his credibility.

[¶ 50] The second portion of the record is from the trial transcript of PRC's cross examination of Mr. Cramer. Counsel for PRC questioned him to clarify that he took medication in 2005 because of his neck condition, and that he had not worked during 2005 because he was concerned about his neck condition. Mr. Cramer suggests that this was a general attack on his credibility, but that is not reflected in the record. Mr. Cramer provides no further explanation of how the cross examination about his neck condition had an impact on the jury's perception of his overall credibility. Unable to perceive how the district court's limitation on evidence relating to his neck injury could have affected Mr. Cramer's overall credibili-

ty, we continue to agree that the issue of whether such evidence should have been allowed is moot.

## *CONCLUSION*

[¶ 51] We have considered each of Mr. Cramer's appeal issues, and conclude that the district court committed no error that would justify reversing the jury's verdict. We affirm the judgment.