2011 WY 59

**James P. WUNSCH, Appellant (Plaintiff),**

**v.**

**Kelly M. PICKERING, f/k/a Kelly M. Wunsch, Appellee (Defendant).**

**No. S–10–0004.**

Supreme Court of Wyoming.

April 12, 2011.

Representing Appellant: Matthew Giacomini and Andrew Reid, Springer and Steinberg, PC, Denver, Colorado. Argument by Mr. Reid.

Representing Appellee: Lea Kuvinka, Kuvinka & Kuvinka, PC, Jackson, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶1] In this post-divorce case between James Wunsch and Kelly Pickering, formerly known as Kelly Wunsch, the district court resolved a dispute between the parties concerning an amount of money Mr. Wunsch owed Ms. Pickering pursuant to the provisions of their divorce settlement agreement. Mr. Wunsch challenges the district court's decision. We will affirm.

## ISSUES

[¶ 2]   Mr. Wunsch presents these issues:

1.  Did the district court abuse its discretion by issuing an order compelling Mr. Wunsch to produce documents that were irrelevant or not in his possession, custody, or control?

2.  After the district court entered default against Mr. Wunsch as a sanction for failing to produce the documents as ordered, did the district court err as a matter of law by restricting Mr. Wunsch's participation in the subsequent hearing on damages?

3.  Was the evidence sufficient to support the trial court's award of damages?

## FACTS

[¶ 3]   Before their divorce in 2004, Mr. Wunsch and Ms. Pickering owned and operated a financial services business, helping to invest their clients' funds in a wide variety of financial products, including mutual funds, stocks, bonds, annuities, and life insurance. The two were affiliated with LPL Financial Corporation, a financial investment company. During the divorce, the couple entered into a property settlement agreement that was later approved by the district court and incorporated into the divorce decree. The agreement provided generally that Mr. Wunsch would continue operating most of the financial services, while Ms. Pickering would receive payments to compensate for her share of the former business. The agreement, referring to Mr. Wunsch as "JIM" and to Ms. Pickering as "KELLY," included this fee-splitting provision:

> The parties will share equally any fees earned on joint client accounts. . . . If JIM replaces any of the above joint client accounts, JIM and KELLY will share equally the fees on the replaced account . . . until such time as KELLY has received in fees an amount equal to two times the annual earnings on the amount replaced, based on the fee charged before the replacement. At such time, KELLY shall no longer receive any fees on the replaced account.

[¶ 4]   Not long after the divorce, disputes developed between the parties about the interpretation and administration of this agreement. The disputes were mediated, and many of them settled. In this mediation, the parties agreed to appoint an accountant as Administrator to perform the accounting required under the settlement agreement. The mediation did not resolve the parties' disagreement about the meaning of the phrase "two times the annual earnings on the amount replaced." That dispute was ultimately resolved in *Wunsch v. Pickering*, 2008 WY 131, 195 P.3d 1032 (Wyo.2008).

[¶ 5]   The Administrator developed a list of approximately 165 joint accounts held by the parties as of the date of divorce. As long as clients' funds remained in the parties' joint account, the accounting was relatively simple. The financial services company could split the fees, and send one half directly to Mr. Wunsch and one half directly to Ms. Pickering. Both parties had access to information about the accounts and the fees received. The Administrator could use this information to reconcile the accounts and, when some adjustment was necessary because of medical expenses for the children, for example, the Administrator would facilitate payments from one party to the other to balance the accounts.

[¶ 6]   The accounting was more difficult when clients removed their funds from the parties' joint accounts. A client might take the funds and reinvest in another financial product offered by Mr. Wunsch, such as insurance or annuities. In their settlement agreement, the parties referred to this as a "replaced" account. For a replaced account, Mr. Wunsch would continue to receive fees, and under the agreement, Ms. Pickering remained entitled to half of those fees. Because a replaced account was held by Mr. Wunsch individually, however, Ms. Pickering did not have the same access to information about it, and the fees would not be paid directly to her. She and the Administrator had to rely on information provided by Mr. Wunsch to determine what amount Ms. Pickering should receive pursuant to the settlement agreement.

[¶ 7]  However, a client might instead remove funds from the parties' joint account and, for example, keep the cash or reinvest through a different financial services company unrelated to Mr. Wunsch.  For a "non-replaced" or "closed" account such as this, Mr. Wunsch would no longer earn any fees.  According to Mr. Wunsch, he would, in turn, not owe Ms. Pickering any fee split under the terms of the settlement agreement.

[¶ 8]  As noted above, the Administrator originally listed approximately 165 joint accounts held by the parties.  By the time the current dispute arose, the Administrator had listed approximately 50 of those as "inactive" accounts that were no longer held in the parties' joint accounts.  A dispute developed concerning these inactive accounts.  Ms. Pickering pointed out that, if the accounts had been replaced and Mr. Wunsch was still earning fees on them, then she was still owed half of those fees.  Mr. Wunsch claimed, to the contrary, that these accounts had not been replaced and he owed Ms. Pickering no fees relating to these accounts.  The Administrator could tell that the clients' funds had been removed from the parties' joint accounts, but did not have adequate information to tell if the accounts had been replaced. He continued to calculate the "projected amount" Ms. Pickering would be owed if these accounts had been replaced, but he could not determine whether Ms. Pickering was actually owed these amounts.

[¶ 9]  In 2009, Mr. Wunsch filed a motion asking the district court to clarify what, if anything, he owed Ms. Pickering on certain accounts.  Ms. Pickering filed a response asserting that Mr. Wunsch had replaced these accounts, but had breached the settlement agreement by failing "to disclose sufficient information to [allow her or the Administrator] to follow the replaced accounts." Based on this alleged breach, she asked the district court to order Mr. Wunsch to pay the entire projected amount.  The district court set a hearing on these issues for May 8, 2009.

[¶ 10]  On March 24, 2009, Ms. Pickering served discovery requests on Mr. Wunsch. These included requests for admissions, interrogatories, and requests for production of documents.  Among the documents request-ed were those referring to or relating to the "inactive" accounts, the tax returns and forms for Mr. Wunsch individually and for Wunsch Financial Services, Inc., and the commission statements Mr. Wunsch had received since August of 2005.  Mr. Wunsch's response, delivered on April 28, 2009, was generally to object to the production of these documents, stating that the requests were "irrelevant and not calculated to lead to the discovery of admissible evidence and . . . propounded only to harass and intimidate."  Ms. Pickering filed an "Expedited Motion to Compel" on April 29, 2009, arguing that the objections were both untimely and without merit.  Responding to the motion to compel, Mr. Wunsch defended his objections, but further explained that he had requested information about the 50 inactive accounts from LPL. LPL did not respond until April 28, 2009, when it informed Mr. Wunsch that it could not provide the requested information without a court order.  Mr. Wunsch had obtained the court order and sent it to LPL, but had not yet received the documents.

[¶ 11]  The district court held a brief hearing on the motion to compel on May 4, 2009. Both sides presented argument, with Ms. Pickering contending that she needed the requested documents in order to present her case at the May 8 hearing, and Mr. Wunsch contending that the documents were irrelevant, unnecessary, and unavailable.  Mr. Wunsch also indicated that the documents requested from LPL should be delivered soon, and near the end of this hearing, the parties suggested that they could meet on the evening of May 7, just prior to the hearing, and attempt to work out their differences. Encouraging the parties to meet as scheduled, the district court took the motion to compel under advisement.

[¶ 12]  The record does not explicitly reflect the parties' meeting on May 7, but their comments at the May 8 hearing suggest that they had met.  They indicated that some documents had been received from LPL and delivered to Ms. Pickering.  Based on information from the LPL documents, Mr. Wunsch had prepared a summary of the 50 inactive accounts, indicating the date the funds had been transferred from the joint

account, the amount transferred, and to whom the funds were paid. When Mr. Wunsch attempted to introduce this summary as a hearing exhibit, Ms. Pickering objected to the lack of foundation, stating that "this is exactly the type of material which we were not allowed discovery on." She argued that the underlying information had been compiled by an LPL employee who was not present to testify or be cross-examined, using documents that were not identified or produced. She objected that the exhibit was only a summary, and because it lacked any foundation or "backup material" to support it, it was inadmissible. Emphasizing that the backup materials were the same documents Mr. Wunsch had failed to produce in response to her discovery requests, Ms. Pickering offered a continuing objection to the summary document.

[¶ 13] Although the district court neither admitted nor excluded the disputed document, the hearing continued, with both parties questioning the Administrator. The district court then announced a short recess. Following the recess, the parties informed the court that they had "reached some agreements" about certain interim payments Mr. Wunsch would make to Ms. Pickering. They also informed the court that the parties "may still have discovery problems," but "could perhaps resolve them . . . in time for another hearing." The district court agreed to continue the hearing, and scheduled the next round for September 30, 2009.

[¶ 14] Efforts to resolve the discovery dispute were apparently fruitless, as the next document in the record is Ms. Pickering's "Renewed Expedited Motion to Compel," filed September 2, 2009. This motion stated that Ms. Pickering had served additional discovery requests on July 29, 2009, and that Mr. Wunsch had responded on August 25, 2009. He objected to nearly every request as "overbroad, unduly burdensome and time consuming, irrelevant, not calculated to lead to the discovery of admissible evidence, [and] propounded only to harass and intimidate [Mr. Wunsch]." To the request for his commission statements, Mr. Wunsch also objected that the request sought "confidential, proprietary and privileged information," and

claimed that he did not "have any of this information, he is not required to maintain this information and he no longer has access to the LPL system to obtain the information." In her renewed motion to compel, Ms. Pickering presented arguments similar to those made regarding the previous motion to compel. Mr. Wunsch's response likewise presented arguments similar to those previously employed.

[¶ 15] On September 17, 2009, the district court issued an order granting Ms. Pickering's renewed expedited motion to compel. Without further explanation, the district court concluded that Ms. Pickering's discovery requests were "proper and necessary." It ordered Mr. Wunsch to "make full and complete responses to the discovery served on him on July 29, 2009," and to serve the responses "no later than September 25, 2009."

[¶ 16] Mr. Wunsch provided a response by the court's deadline, but Ms. Pickering remained unsatisfied with the production. On September 28, 2009, she filed an "Expedited Motion for Sanctions; Motion for Entry of Default Judgment, Attorney's Fees and Costs," asserting that Mr. Wunsch's responses to her discovery request and the court's order remained deficient. She asserted that sanctions were appropriate, and suggested that default should be entered against Mr. Wunsch.

[¶ 17] The district court convened the hearing as scheduled on September 30, 2009, and proceeded to consider Ms. Pickering's motion for sanctions. Ms. Pickering reasserted that Mr. Wunsch's failure to provide the requested documents left her unable to make her case that the 50 inactive accounts had been replaced. Mr. Wunsch asserted that he had provided adequate responses to the discovery requests, in compliance with both the Wyoming Rules of Civil Procedure and the district court's order to compel. After taking a brief recess, the district court granted Ms. Pickering's motion for sanctions—"I feel I have no other choice"—and stated that a default would be entered against Mr. Wunsch. The district court then heard the parties' evidence and arguments concerning the amount of damages that

should be awarded. Ms. Pickering asserted that she should receive over $195,000, which included the amount calculated by the Administrator as the projected amount she was entitled to if all of the 50 inactive accounts had been replaced by Mr. Wunsch. After considering the parties' positions, the district court awarded damages in the amount requested by Ms. Pickering.

[¶ 18] Mr. Wunsch appealed from two of the district court's rulings in this matter. He challenges the grant of Ms. Pickering's motion to compel discovery, and he appeals the district court's award of damages on the bases that he was not allowed to participate fully in the damages hearing, and that there was insufficient evidence to support the district court's award. He has not appealed the entry of default.

## DISCUSSION

### 1. Did the district court abuse its discretion by issuing an order compelling Mr. Wunsch to produce documents that were irrelevant or not in his possession, custody, or control?

[¶ 19] We review a district court's decision to compel production for abuse of discretion. *Inskeep v. Inskeep,* 752 P.2d 434, 436 (Wyo.1988). When we review for abuse of discretion, the ultimate issue is whether the district court could reasonably conclude as it did. *Lieberman v. Mossbrook,* 2009 WY 65, ¶ 64, 208 P.3d 1296, 1314 (Wyo.2009).

[¶ 20] Mr. Wunsch first asserts that the motion to compel should not have been granted because the documents Ms. Pickering requested through discovery were not relevant. The argument lacks merit. The documents requested by Ms. Pickering were plainly relevant to her claim that Mr. Wunsch had replaced certain joint accounts, and owed her fees on those accounts in accordance with the settlement agreement reached in the divorce.

[¶ 21] In her Renewed Expedited Motion to Compel, Ms. Pickering explained the relevance of the information she had requested about Mr. Wunsch's representative identification numbers:

In past and recent discovery, [Ms. Pickering] requested documentation on all rep ID numbers held by [Mr. Wunsch] individually, with others, or by his corporation. All commissions are paid through a registration known as a "rep ID" number. While the mediation agreement requires [Mr. Wunsch] to turn over commission statements, [he] can have other rep ID numbers with others, such as partners, and can have an unlimited amount of shared rep ID numbers. He would also receive another rep ID number when he changes affiliations, such as he recently did [by leaving LPL and becoming associated with another financial institution].

[Mr. Wunsch] has objected to producing this information twice. [Ms. Pickering] is only interested in tracking whether any of the joint accounts on which she is owed are still being held by [Mr. Wunsch].

[Ms. Pickering] requested production to ensure that accounts which she is to be paid on, and is not being paid on, are not generating income to which she is entitled through another rep ID number [that] is being paid to [Mr. Wunsch] alone.... [Ms. Pickering] is entitled to documentation on other rep ID numbers to ensure that commissions to which she is entitled are not making an end-run around the Administrator and being paid [to Mr. Wunsch] through another rep ID number.

She also explained why she sought to discover Mr. Wunsch's commission statements:

In addition to the rep ID tracking, commission statements are necessary for several reasons:

First, [Ms. Pickering] must establish which commissions she is or is not entitled to share in. [She] agrees that she is not entitled to accounts which [Mr. Wunsch] obtained after the divorce. In order to establish what commissions are from accounts in the accounting which should be shared vs. which commissions [she] does not share in, commission statements are necessary.

Second, commission statements will track not only investment account commissions, but also other replacement products covered by the divorce settlement. An exam-

ple of replacement products which are not investment accounts would be life insurance policies and a variety of other financial products. . . . In instances where the replacement is made [into Mr. Wunsch's] individual rep ID or an undisclosed rep ID because the account was moved with the consent of the client, [Ms. Pickering] is not privy to commission information unless [it is] produced as requested.

Finally, with respect to her request for tax information, Ms. Pickering provided this explanation to the district court:

[Ms. Pickering] has requested documents which should track with other materials with regard to commissions in order to assure there are no discrepancies. With tax returns, commission income is shown and 1099's will be received. These will cover all of [Mr. Wunsch's] income sources. The purpose of this request is not to make a claim against commissions in which [Ms. Pickering] should not share, but to reconcile the information [to] assure that [she] is receiving what she is entitled to. If, for instance, a 1099 is received from an insurance company commission, then [Ms. Pickering] can inquire whether that was for a joint account or not. She can match this with commission statements [and] eliminate commissions to which she is not entitled. If [Mr. Wunsch] is not required to produce this information, he can, without question, withhold [Ms. Pickering's] share of commissions.

[¶ 22] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. If the information sought by Ms. Pickering indicated that clients formerly invested in the parties' joint accounts had moved those investments through Mr. Wunsch's individual account, that would tend to make it more probable that those joint accounts had been replaced. To the extent the information related only to Mr. Wunsch's individual clients, that would tend to make it less probable that those accounts had been replaced. The district court could reasonably determine that the

documents sought by Ms. Pickering were relevant. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of the party seeking discovery." W.R.C.P. 26(b)(1). The district court did not abuse its discretion in granting the order to compel the production of these documents.

[¶ 23] The fact that Mr. Wunsch had produced some documents subpoenaed from LPL did not obviate the need for the additional documents requested by Ms. Pickering. Those documents indicated dates on which the joint accounts had been closed, the amount of funds in those accounts, and to whom the funds were paid. But as Ms. Pickering points out, if an account was closed and a check sent to the client, the client could still have used the money to purchase other financial products from Mr. Wunsch. Ms. Pickering adequately explained to the district court why the information from LPL was insufficient by itself, and why the additional documents she had requested were needed to develop her case.

[¶ 24] Mr. Wunsch's objection that the documents were not in his possession, custody, or control is unsupported by facts in the record. Mr. Wunsch never represented that the "rep ID numbers" were unavailable to him. With regard to the commission statements, he initially asserted that they were sent to him only in electronic format, and had all been deleted, and were therefore not in his possession. However, at the hearing held on September 30, 2009, Mr. Wunsch's counsel explained that "the commission statements from LPL, you know, I suppose we could try and get those from LPL, but he does not have them and they are not in his care, custody or control." This amounts to an admission of the seemingly obvious fact that, whether or not Mr. Wunsch had the commission statements in hand, he could have obtained copies from LPL.

[¶ 25] Later, during the same hearing, counsel for Mr. Wunsch told the district court, "Hopefully we can get the LPL commission statements that he did not have in his possession or available to him or on his computer." The district court pointedly asked,

Where was all this stuff, [Counsel], this summer? I mean here we are you say you're going to get these things and so we're looking at maybe setting aside another day or half day [for another hearing]. But why aren't these things—you say you can get them or they're on their way why don't we have them now?

Counsel responded:

Because they were not requested by Mr. Wunsch and ... he did not understand that if he could ask for it and receive it then that would be in his control, he believed it was that if he had it in his possession or on his computer[,] that was what he had to produce.

Mr. Wunsch claims on appeal that the district court erred by ordering him to produce the commission statements because they were outside of his possession, custody, or control. We reject this claim not just because it lacks factual support in the record, but further, because it is contradicted by the facts of record.

[¶ 26] As to the tax records, it appears that Mr. Wunsch did produce all of the requested information except for the tax returns and 1099 Forms for 2008. Mr. Wunsch repeatedly represented that the 2008 tax returns were still being prepared, and so were not yet in existence. He asserted that his 1099 Forms for 2008 were unavailable for the same reason. From a practical standpoint, the assertion that the 1099 Forms for 2008 were still unavailable as of September 30, 2009, seems untenable. Although the district court did not specify this as one of the reasons for ordering these tax forms to be produced, it would not have been unreasonable to reject this assertion for lack of credibility. Moreover, in the hearing held on September 30, 2009, Mr. Wunsch's counsel stated that "The 1099 for 2008 has been ordered and should be here," another admission that the document was not beyond Mr. Wunsch's control.

[¶ 27] If the 2008 tax returns were the only documents at issue, we might agree with Mr. Wunsch that the district court erred in compelling production. However, as discussed above, Mr. Wunsch had failed to disclose his "rep ID numbers," his commission statements, and his 1099 forms for 2008. His assertion that all of these documents were beyond his possession, control, and custody, is unpersuasive.

[¶ 28] For these reasons, and after careful review of the record on appeal, we cannot say it was unreasonable for the district court to conclude that the documents requested by Ms. Pickering through discovery were relevant and within Mr. Wunsch's possession, custody, or control. It was not an abuse of discretion to issue an order compelling Mr. Wunsch to produce the disputed documents.

2. *After the district court entered default against Mr. Wunsch as a sanction for failing to produce the documents as ordered, did the district court err as a matter of law by restricting Mr. Wunsch's participation in the subsequent hearing on damages?*

[¶ 29] We note again that Mr. Wunsch has not appealed the district court's entry of default against him as a sanction for violation of its discovery order. However, we have previously recognized that an entry of default, establishing liability, is separate and distinct matter from a default judgment establishing the amount of damages. *Spitzer v. Spitzer,* 777 P.2d 587, 592 (Wyo.1989). Accordingly, while we cannot review the entry of default at this point, we may consider Mr. Wunsch's issues relating to the default judgment.

[¶ 30] Mr. Wunsch concedes that the district court's entry of default as a discovery sanction under W.R.C.P. 37 and 55 established that he was liable on Ms. Pickering's claims. Following the entry of default, he was no longer entitled to contest, or present evidence relating to, the issue of liability. But, he argues, he was still entitled to present evidence on the issue of damages:

An entry of default goes solely to liability and is, by definition, not a result of any trial on the merits.... In contrast, a default judgment is a ruling on the merits on the issue of damages. It is a wholly separate proceeding from the entry of default and, where damages are unliquidated, requires a sufficient showing of damages to

support a trial court's award. As a separate proceeding on the merits, a party who may have been foreclosed from a defense on the merits as a sanction for discovery non-compliance has the right to litigate damages, to fully participate and submit evidence in the evidentiary proceeding on unliquidated damages.

(Internal citations and emphasis omitted.) We agree that Mr. Wunsch's argument is consistent with our precedent. *See, e.g., McGarvin–Moberly Construction Co. v. Welden*, 897 P.2d 1310, 1315 (Wyo.1995) ("[I]n the assessment of damages following entry of default, a defaulting defendant has the right to participate in the proceedings and introduce affirmative evidence on its own behalf in mitigation of damages.").

[¶ 31] Mr. Wunsch claims that, during the hearing held on damages, the district court denied his right to participate in the proceedings by improperly prohibiting him from presenting evidence relating to the damages he owed Ms. Pickering. He asserts that the district court erred as a matter of law in restricting his participation in the hearing, and because this raises a question of law, it must be reviewed *de novo*. However, the record reflects that Mr. Wunsch was afforded an opportunity to participate in the damages hearing, and that he did participate. The real basis of his complaint is that the district court excluded most of the evidence he sought to introduce at that hearing. We therefore agree with Ms. Pickering that this is more properly cast as an evidentiary issue. We review a district court's rulings on the admission or exclusion of evidence for abuse of discretion. *Cramer v. Powder River Coal, LLC*, 2009 WY 45, ¶ 22, 204 P.3d 974, 981 (Wyo.2009).

[¶ 32] As the basis for his argument that he was improperly restricted from participating in the damages hearing, Mr. Wunsch asserts that Ms. Pickering was "permitted to testify at length as to her speculation that each of the [50 inactive] accounts had been replaced by Mr. Wunsch." In contrast, as he explains it, "Mr. Wunsch attempted to respond that he had not replaced those accounts and had, therefore, received no unreported income from them," but the district court "repeatedly sustained Ms. Pickering's objections to such evidence and ruled that the discovery sanction also foreclosed Mr. Wunsch from presenting such evidence."

[¶ 33] Mr. Wunsch's argument rests on a misconception about the effect of the district court's entry of default against him. Through her discovery requests, Ms. Pickering sought documents from which she could find evidence indicating which of the 50 inactive accounts had been replaced and which had not. Mr. Wunsch did not produce the requested documents. When the district court entered default against him, it was as a sanction for failing to provide the documents with which Ms. Pickering could prove which accounts had been replaced. The default, therefore, served to prohibit Mr. Wunsch from contesting that the accounts had been replaced.

[¶ 34] Because the effect of the entry of default was to establish that the disputed accounts had been replaced, evidence offered by Mr. Wunsch to show that the accounts had not been replaced was irrelevant. This example from the hearing is illustrative of the many relevancy objections sustained by the district court:

Q. [by counsel for Mr. Wunsch] Mr. Wunsch, on Exhibit EE, [Ms. Pickering's] calculation of damages here of a $195,000 penalty, what—that assumes that all the accounts were replaced by you; is that right?

A. It does.

Q. And that all the accounts were somehow purchased by you?

A. It assumes that if every account was replaced by me that that is what I would owe [Ms. Pickering].

Q. And that every account on that list you somehow received compensation for?

A. That is what it assumes.

Q. And of ... So of these approximately 165 accounts in Exhibit EE how many of those did you actually transfer?

[by counsel for Ms. Pickering] I'm going to object, it's irrelevant. You've already ruled on the transfer issue and so you can't get into—it's irrelevant at this point.

THE COURT: And I'm going to sustain that.

Because the entry of default decided the issue of whether the accounts had been replaced, and decided it against Mr. Wunsch, any evidence suggesting that the accounts had not been replaced was irrelevant, and the district court did not err in excluding it.

### 3. Was the evidence sufficient to support the trial court's award of damages?

 [¶ 35] Mr. Wunsch correctly contends that, following the entry of default against him, Ms. Pickering still had the burden of proving her damages. *Spitzer,* 777 P.2d at 593. He asserts that Ms. Pickering failed to meet that burden because she "was unable to provide any evidence at all, other than her bare suspicions and speculations, that the 51 'inactive' joint client accounts that were the basis for her damages had ever generated any fees or income from which she could claim a share under paragraph 22A of the Settlement Agreement." When we are asked to consider whether the evidence was sufficient to sustain a damages award, we

> assume that the evidence of the prevailing party is true. We give this evidence every favorable inference and leave out of consideration any conflicting evidence of the other party. The trial court's findings are presumed to be correct and will not be disturbed absent a showing that they are clearly erroneous, inconsistent, or contrary to the great weight of the evidence.

*Examination Mgmt. Servs. v. Kirschbaum,* 927 P.2d 686, 698 (Wyo.1996) (internal citation omitted).

[¶ 36] As with the previous issue, Mr. Wunsch's argument is based on a misconception of the effect of the entry of default against him. It amounted to a ruling that the inactive accounts had all been replaced by Mr. Wunsch. Ms. Pickering was no longer required to prove that any of the accounts had been replaced. She had to prove what her damages were if all the accounts had been replaced.

[¶ 37] Mr. Wunsch recognized, as shown in the quotation above from the damages hearing, that Ms. Pickering's "calculation of damages here of a $195,000 penalty, what—

that assumes that all the accounts were replaced." This calculation was done by the Administrator for the purpose of establishing the "projected amount" Ms. Pickering would be owed if the accounts were all replaced. After the district court entered default establishing, in effect, that all the accounts were replaced, this evidence was sufficient to prove Ms. Pickering's damages.

[¶ 38] Affirmed.